## Culin *versus* Woodbury Glass Works.

1. Upon the breach of a contract to furnish goods, when similar goods cannot be purchased in the market, the measure of damages is the actual loss sustained by the purchaser by reason of the non-delivery.

2. A. agreed to furnish B. a certain total quantity of bottles of a particular kind. He furnished more than half the quantity, but failed to deliver the balance. It was not possible to purchase enough similar goods in the market to complete the total quantity contracted for. The purchaser was a manufacturer of cooking extracts and syrup, which he put up in the bottles, and sold to the trade. He testified that by reason of A.'s default, he was unable to fill orders he had on hand at the time of the breach. In an action by A. against B. to recover the price of the goods actually delivered, the court instructed the jury (1) that the defendant was entitled to set off the excess paid by him over the contract price for a portion of the deficient bottles which he purchased in the market, and (2) as to so much of the deficient quantity as he was unable to purchase in the market, he was entitled to set off his actual loss sustained by not having such quantity furnished to him, viz., the difference between the contract price of the bottles he was to pay his vendor, and what loss he sustained in his own manufacture by not receiving the advance on the contract price upon any contracts he had himself made in reliance upon the fulfilment of the contract by the vendor:

*Held*, that the instruction was as favorable to the defendant as he could reasonably ask.

3. Assignments or specifications of error must be drawn in substantial compliance with the Rules of the Supreme Court. In connection with the plea of the defendant in error, which is usually formal, the specifications of error constitute the pleadings upon which the judgment of

[Culin v. Glass Works.]

this court is pronounced, and hence it is necessary that they should be complete in themselves without reference to other parts of the record.

4. Certain assignments of error in this case being contrary to rule, for the reasons stated in the opinion of this court, they were dismissed.

January 5th, 1885. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett and Green, JJ. Clark, J., absent.

Error to the Court of Common, Pleas No. 4, of *Philadelphia county*: Of January Term, 1884, No. 195.

Assumpsit by the "Woodbury Glass Works" against Robert S. Culin, trading as Knight Cooking Extract Company. Narr. in common counts. Pleas, non- assumpsit, set-off, payment with leave, &c.

On the trial the following facts appeared: In March, 1882, the plaintiff contracted to furnish the defendant one hundred gross of 8-oz. syrup bottles, to be made from a special mould, at $2.97 per gross. The plaintiff furnished $62\frac{7}{12}$ gross, but failed to supply the rest. Defendant purchased in the market 28 gross at an excess over the contract price of $17.41, but was unable to obtain in the market, at any price, the remaining $9\frac{5}{12}$ gross, to complete the 100 gross contracted for. This was admitted. Plaintiff claimed to recover the price of $62\frac{7}{12}$ gross, furnished under the contract, at $2.97 per gross, viz., . . . . . . . . $218 14

And admitted the above set-off, claimed by
defendant, of    .    .    .    .    .    $17 41
And also admitted a further set-off of    .    10 65    28 06

And claimed to recover, with interest, the balance, . $190 08

The additional amount of $10.65, admitted by plaintiff as set-off, was computed at the excess the defendant would have paid if he had· been able to purchase in the market, and had purchased, the $9\frac{5}{12}$ gross, at the highest rate he had paid for any part of the 28 gross.

The defendant claimed to set off, in addition to the $17.41, the damages he sustained by the plaintiff's failure to deliver the $9\frac{5}{12}$ gross, which he was unable to purchase in the market. Defendant, in pursuance of an offer to prove that the $9\frac{5}{12}$ gross had, or would have had, a market value in his hands of $9.97 per gross testified as follows:

We don't sell empty bottles, we sell bottles filled with different commodities.

Q. What could you have sold $9\frac{5}{12}$ gross for in the market in the way in which you sold them as prepared by you?

: Ans. They are filled with drinking syrup by the dozen after we buy them, and then they are labeled and packed in cases and sold to the trade. We could have sold them in the market at prices ranging from $15 to $18 per gross. We had orders

at those prices. We had orders predicated on the delivery of these very goods from plaintiff, and failed to fulfil them. We have sold some at these prices. We sold all they supplied at these prices. The market value of the bottles alone when prepared for sale by us was between $7 and $8.

*Cross-examined.*—We sold syrup. There was an increase in price of $7 per gross in our hands of syrup in bottles as we prepared the packages. The bottles originally cost $2.97 per gross.

|                             |   |   |   |   |        |
|-----------------------------|---|---|---|---|--------|
| Say bottles . | . | . | . | . | $2 97 |
| Profit per gross | . | . | . | . | ·7 00 |
|                             |   |   |   |   | $9 97 |
| Syrup and labor, corks, labels, etc. | | | | | 5 03 |
|                             |   |   |   |   | $15 00 |

Value of bottles alone $9.97. Bottles arose in value in our hands $7.00.

Benjamin S. Haldeman, defendant's book-keeper, testified: This $7 per gross profit was an increase on the value of the bottles, in my individual opinion.

*Cross-examined.*—I said in my opinion the increase was on the bottles. We made our own syrup, and we buy corks. We have people to pack and fill, etc.; we pay them wages. We manufacture a reputation for the bottles also. What we do for the bottles is not the smallest part of the work. It requires more people for the bottles than for the other parts of the packages. We make the profit on the bottles, in the syrup line of our business.

Defendant offered to show by this witness that he went down to plaintiff's place, pending the filling of the contract, to hurry up the bottles after an accident had happened, and was told by one of plaintiff's agents (Mr. Voorhees), at the place of plaintiff, that the non-fulfilment of the contract was due to the negligence of Mr. Madden, plaintiff's superintendent, in not filling the defendant's order before the accident to the furnace.

Objected to. Objection sustained. Exception.

Lewis A. Hewitt, a witness for the plaintiff, testified: I was agent for plaintiff.

Q. Why did not you furnish the bottles of the one hundred gross of vials ordered by the defendant?

Objected to unless it is proposed to show that plaintiff was prevented by the act of God, or defendant's act, or default. Objection overruled. Exception.

Ans. It was owing to the fact that the cap of the furnace

[Culin v Glass Works.]

fell in and stopped the blast altogether. This was about middle of June, 1882.

The court charged the jury as follows:

The material point in the case is the amount of damage you are to allow the defendant. The plaintiffs failed to furnish $37\frac{1}{2}$ gross. The defendant bought twenty-eight gross at an increase of $1.13 per gross. For that he is entitled to damages. We then get down to the small balance of $9\frac{5}{12}$ gross, and the question is how are we to measure the damage. Plaintiffs admit the lowest market price to be $1.13 per gross, and the defendant says if he had had these bottles on hand, he could have made, by filling them and selling them, seven dollars per gross, and he claims this for a loss $9\frac{5}{12}$ gross at seven dollars.

The general rule is that a party failing to comply with his contract is liable for the value in open market of the goods, at the time of his failure, so that if the defendant might have bought them when the contract was broken for a higher price, the difference is all he could claim. But this is a peculiar case, and we are without the ordinary rule, because the defendant could not buy. The ordinary rule of damage will not remunerate the party when he cannot buy the articles elsewhere.

But if an article of the same quality cannot be procured in the market, the measure of damages is the actual loss which the vendor sustains in his own manufacture by not receiving the advance on the contract price upon any contracts which he had himself made in reliance upon the fulfilment of the contract by the vendor. His legitimate loss is the difference between the contract price he was to pay to his vendor and the price he was to receive: McHose v. Fulmer, 23 P. F. S. 365. Now what did the defendant actually lose? It is said he lost $7 per gross. Haldeman says that is his opinion, and he is not positive. Culin says: "We sold syrup at a profit of $7 per gross. On the whole package we got a profit of $7." Cost of bottles was $2.97. Profit on whole article $7, cost of syrup $5.03. Quære: was the $7 a profit on the bottles alone, or on the whole article. If it was on the bottles it was a set-off. If you are of opinion the loss was on the bottles alone you must allow it to the defendant or if it was less, allow less.

In the amount of damages the figures are for you. On the 28 gross the defendant, it is admitted, is entitled to $1.13 damages. As to the other 9 or $9\frac{5}{12}$ gross, the defendant is entitled to such loss as he suffered by not being able to get bottles in the market. Deduct the price on the 28 gross, then on the $9\frac{5}{12}$ gross allow the defendant all actual loss suffered by him

[*Culin v.* Glass.Works.]

in not having the bottles furnished. In charging you that the
defendant is entitled to any loss on contracts he had made
himself in reliance on contracts of the plaintiff, I leave to you
whether or not the defendant had any contract on hand when
the plaintiff failed to furnish the bottles. His testimony is
that he had orders and could not fill them. If this is so, he
had a set-off. If the orders came in subsequently, he had no
claim on them.

Verdict for plaintiff, for $212.31, and judgment thereon.
The defendant took this writ of error, and filed the following
assignments of error:

1. That the learned court below erred in admitting as evi-
dence (notwithstanding the objection of the plaintiff in error)
that the reason the defendant in error did not furnish the bot-
tles was owing to the fact that the cap of the furnace fell in
and stopped the blast altogether.

2. That the learned court below erred in refusing to allow
the plaintiff in error to show that the failure on the part of
the defendant in error to furnish the bottles was due to the
negligence of Mr. Madden, the superintendent of the defen-
dant in error.

3. That the learned court below erred in overruling the
objection of the plaintiff in error to the following question
asked by defendant in error of its witness, Lewis A. Hewitt,
viz: ".Why did you not furnish the one hundred gross ordered
by the defendant?" the question being objected to unless it
was proposed to show that the plaintiff (below) was prevented
by the act of God or defendant's act or default.

*Hunn*, for the plaintiff in error.

*James M. West*, for the defendant in error.

Mr. Justice STERRETT delivered the opinion of the court,
February 9th, 1885.

It may be that the jury, in making up their verdict, failed
to allow defendant below the full amount of damages to which
he was justly entitled under the evidence; but if they did, it
was not the fault of the court. In submitting the case to the
jury, the learned judge assumed there had been a breach of
the contract by plaintiff below in failing to furnish a consid-
erable portion of the bottles called for by the contract; and
that defendant was entitled to set off the damages he had sus-
tained thereby. As to the measure of damages, the instruc-
tions were quite as favorable to defendant as he could reasona-
bly ask, and no exception to the charge was taken by either
party. The only question of fact involved in the case was

fairly submitted to the jury.   If the verdict was contrary to
the charge or against the weight of the evidence, the defen-
dant's appropriate remedy was by motion for new trial, and of
that he does not appear to have availed himself.

. There appears to be nothing in the record on which to base
the first assignment of error, unless it be the question com-
plained of in the third specification.   This being so, the as-
signment is clearly not according to the rule which provides,
" Where the error assigned is to the admission or rejection of
evidence, the specification must quote the full substance of
the bill of exceptions or copy the bill in immediate connec-
tion with the specification."

The second assignment is even more objectionable than the
first.   It is not only contrary to rule, but it is misleading, in
that it does not disclose the hearsay character of the evidence
by which it was proposed to prove the alleged fact.   The offer,
as we find by reference to the notes of trial, was to prove
by the witness Haldeman, " That he went down to plaintiff's
place, pending the filling of the contract, to hurry up the bot-
tles after the accident had happened, and was told by one of
plaintiff's agents (Voorhees) that the non-fulfilment of the
contract was due to the negligence of Mr. Madden, plaintiff's
superintendent, in not filling defendant's order before the acci-
dent."   If this offer had been quoted in the specification, as
the rule contemplates, the incompetency of the testimony, as
the baldest species of hearsay, would have been manifest.

It is no answer to say that the offers of evidence referred
to in these specifications will fully appear by reference to the
bill of exceptions or some other part of the record.   In con-
nection with defendant's plea, which is usually formal, the
specifications of error constitute the pleadings upon which the
judgment of this court is pronounced; and hence it is neces-
sary that they should be complete in themselves without ref-
erence to other parts of the record. . After judgment, the
record proper of the court below is remitted, and nothing
remains of record here except the pleadings and the judgment
entered thereon. . Being contrary to rule, the first and second
assignments of error are dismissed.

. The third assignment is not sustained.   The question com-
plained of was not leading, nor was there anything in the
answer thereto that was calculated either to mislead or unduly
prejudice the jury.   It does not appear that the testimony
was elicited for the purpose of excusing the admitted non-
performance of contract on the part of plaintiff below, nor
was it used for any such purpose.   The breach of contract, as
claimed by defendant was virtually admitted, and the fact, as
we have seen, was assumed by the court.   The only question

12 OUTERBRIDGE.—15

was as to the amount of damages defendant was entitled to set off against plaintiff's claim; and that was exclusively for the jury under the evidence. If they erred in not allowing plaintiff in error as much as he was fairly entitled to, his remedy was not by writ of error to rulings of the court which could not possibly have prejudiced his case.

Judgment affirmed.