# CHARLESTON.

National Coal Company v. Overholt *et al.*

Submitted November 13, 1917.   Decided November 27, 1917.

1. Mines and Minerals—*Construction of Lease—Sale and Removal.*

   A deed of lease which grants to the lessee for the term of ten years a particular tract of land and a specific vein of coal known to exist therein, with mining rights, together with plant and all improvements, fixtures, etc., thereon, with covenants of good title and quiet and peaceable possession, but without warranty of acreage or quantity of coal, and wherein and in consideration whereof the lessee covenants and agrees to pay the lessors during the term thereof a specified price per ton for the coal mined, and guarantees a minimum of at least $31,000.00 to be paid the lessors, $5,000.00 down upon execution of the lease, and for the first year $2,500.00, and for the succeeding nine years a minimum royalty of $3,000.00, said payments to be made semi-annually computed from the date of the deed of lease, and as therein otherwise specified, constitutes a sale of the coal in place upon condition that it be removed within the term of the lease, and after the expiration thereof, and payments so made in the absence of fraud, mistake, or misrepresentation on the part of the lessors, such lessee is not entitled because of a shortage in the estimated acreage or quantity of coal to an accounting with the lessors and a decree for payments made in excess of the actual amount of coal in the land.   (p. 433).

2. Limitation of Actions—*Fraud.*

   Right of action predicated on fraud in such a case for alleged deficiency in acreage of coal would be barred by the statute of limitations after five years from the date of the deed, unless the prosecution of such right is in some way not alleged in this case obstructed by grantor or lessor.   (p. 435).

3. Same—*Fraud—Deficiency in Acreage of Coal.*

   And when such right of action for alleged deficiency of coal is predicated on facts which would constitute fraud and deceit on the part of the lessor inducing the lessee to enter into the contract, such action also would be barred after five years from the date of the perpetration of the fraud or mistake, unless the prosecution thereof was in some way obstructed by grantors or lessors.   (p. 435).

4. Mines and Minerals—*Lease or Sale—Option for Extension—Exercise.*

   When in such deed of lease an option is given to the lessee to

extend or renew the lease beyond its term for the purpose only of mining and removing coal from adjoining or other lands over and through the mine and openings on the leased premises, and upon terms specified therein, the lessee must elect to exercise such right within the term of the lease, and he cannot do so after the term of the original lease has expired. (p. 437).

Appeal from Circuit Court, Harrison County.

Suit by the National Coal Company against J. W. Overholt and others. Decree for defendants, and plaintiff appeals.

· *Decree affirmed.*

*Swartz & Templeman,* and *Warder & Robinson,* for appellant.

*Smith & Jackson,* for appellees., ·

Miller, Judge:

By deed of lease dated December 5, 1904, defendants, Overholt and wife, as recited therein, "in consideration of the payment of the rents or royalties hereinafter provided, and the performance by the Lessee of all the terms, conditions and covenants of this lease by it to be performed", thereby demised and leased unto the plaintiff, National Coal Company, its successors and assigns "all the land, coal, coal mines, mining rights and privileges which were conveyed to the lessors" by deed from John G. Rogers and wife to said Overholt and wife, dated September 25, 1900, together with all the improvements, plants, fixtures, appliances, tools and implements acquired by said lessors and then on the described premises and used in connection therewith, and all easements, rights of way and appurtenances belonging to said land, and with habendum and conditions one, two, five, eight, and nine thereof, as follows:

"TO HAVE AND TO HOLD unto the National Coal Company, its successors and assigns, for the full term of ten (10) years, counting from the fifth day of December, 1904, upon the following terms and conditions, to-wit:

"1. The lessee covenants and agrees to pay to the said lessors, their executors, administrators or assigns, during the continuance of this lease, as a rental for the coal and mining

privileges, royalty of ten (10c) for each and every ton of 2240 pounds 'run of mine coal', mined from said leased premises, and guarantee a minimum of at least thirty-one thousand ($31,000) dollars, to be paid as follows, to-wit:

"The sum of five thousand ($5000.00) dollars upon the signing and delivery of this lease, and the first year thereafter a minimum royalty in the sum of twenty-five hundred ($2500.00) dollars, and for the succeeding nine years thereafter a minimum royalty of three thousand ($3000.00) dollars; payments of the said yearly minimum royalties to be made semi-annually, to be computed from the date of the execution of this lease. As the future payments thus to be made will amount to twenty-nine thousand five hundred ($29,-500.00) dollars, and as it will require fifteen hundred ($1500.-00) dollars of the hand money payment of five thousand ($5000.00) dollars to make the thirty-one thousand ($31,000.-00) dollars, minimum above mentioned, leaving thirty-five hundred ($3500.00) dollars as an advance payment in the hands of the lessors, it is agreed that if there should be in any of the ensuing years an annual excess royalty beyond the minimum payments hereinbefore provided, such excess shall be deducted from the said sum of thirty-five hundred ($3500.00) dollars from time to time until it shall have been refunded to the said lessee without any interest, however, being allowed to the lessee therefor, and thereafter any excess royalty shall be paid, along with the semi-annual payments of the minimum royalties as hereinbefore provided; but if at the expiration of the term of this lease, the said thirty-five hundred ($3500.00) dollars shall not have been paid by excess royalties, then the balance unpaid shall be considered as forfeited to the lessors.

"2. The lessee shall have the right and privilege to mine, remove and carry any other coal from the lands it now owns or hereafter may acquire, through the lands and openings on the premises hereby demised, and for this purpose this right shall continue for such term as the lessee may desire, unless this lease is otherwise terminated by the default of the lessee. For said right or privilege the lessee agrees to pay to the said lessors, their executors, administrators or as-

signs, an annual rental of six hundred ($600.00) dollars, to be paid semi-annually from the time the said right or privilege shall have begun. The time when said right or privilege shall begin shall be counted from the date of the first removal of other coal of the lessee through and across said demised premises, and shall continue for sixty days after written notice is given by the lessee to the lessors of their desire to terminate the use of said right or privilege and thereafter upon payment of whatever may then be due for said right or privilege, the same shall cease and determine.

"5. The lessee covenants to mine said coal according to the most improved methods of mining, so that no part of the same may be lost or destroyed by leaving insufficient pillars for protection or support of any that may be unmined at any time, and to observe and perform all the conditions, limitations and covenants with reference to the mining of said coal contained in the deed under which the lessors hold title to the property hereby demised, and to save harmless the lessors from the breach of any such covenants, limitations or conditions.

"8. The lessors covenant that they have a good title to and lawful right to demise the lands, coal and mining rights hereby demised; that the lessees during the continuance of this lease shall peaceably and quietly hold and enjoy the demised property; that they will warrant and forever defend the title of the lessee to the demised premises under this lease against all persons whomsoever, during the continuance thereof and until default shall have been made, if made, as hereinbefore recited.

"9. At the expiration of ten years, the term fixed by this lease, the lessee covenants to pay the lessors, their executors, administrators or assigns, the sum of ten (10c) cents per ton for all the merchantable coal yet unmined on the demised property, the same to be estimated at eighty (80) pounds to the cubic foot; payment in cash to be made immediately upon the estimate of tonnage made by the lessors or their agent, and submitted to the lessee."

The deed from Rogers and wife to said lessors, referred to in said lease, for a description of the property covered there-

by, and exhibited with the bill, grants unto the parties of the second part "all of the Pittsburg vein of coal upon and underlying * * * the land", described therein by metes and bounds as "containing fifty-three and 14-100 acres of surface and the same amount of coal, together with the right to excavate, mine and remove all of said vein of coal upon or underlying said parcel of land without being liable for any injury done to the overlying surface or to anything therein or thereon, with the right to erect all necessary ventilating shafts, also the right to remove upon or under said plat of land the coal from and under adjoining, co-terminous or neighboring lands, except that no opening, except for ventilating purposes shall be made on all that part of said land lying to the south and east" of a certain line. And for the same consideration certain other lands not involved herein were also conveyed by said deed.

By the original bill, presented in March, 1915, the defendants' demurrer to which was sustained, and by the amended bill tendered and filed in January, 1916, and which by the decree appealed from was finally dismissed upon demurrer, plaintiff after referring to the specific terms, provisions and conditions in said lease and deed above recited, among other things alleged as grounds for the relief prayed for, that defendants at the time of entering into said contract assured and represented to plaintiff that there were in fact 53.14 acres of coal in said boundary of land, and that 345,000 tons of coal could be mined and obtained therefrom, and that thereby plaintiff was induced to believe and did believe that said tract contained such acreage and tonnage of coal, which could be obtained or mined therefrom, and that relying thereon, and on said representations and assurances, plaintiff was induced to enter into said lease, and that after so doing it proceeded promptly to carry out in good faith its part of said agreement by digging, mining and removing the coal described therein, and continued therein in a proper and workmanlike manner, and that up to about September, 1914, had paid in royalties to said lessors the sum of $33,000.00, and when on account of the practical exhaustion of the merchantable and obtainable coal, it ceased to mine coal from and

under said land; that the total amount of all the coal so mined by it during the entire period was but 198,323 tons, and that there was left therein but a very small quantity of coal, as plaintiff was advised, not more than 50,000 tons, and sufficient only to furnish props to the surface and to maintain the easement to the adjoining property, and that adding the 50,000 tons so estimated to the 198,323 tons mined and removed from the land there is a deficiency of 81,677 tons of coal which, at the rate per ton royalty reserved, amounts to $8,167.70; that because of the alleged representations, covenants and assurances made to plaintiff by defendants as to acreage and quantity of coal, and which the bill alleges were falsely and fraudulently made, defendants in equity and good conscience were indebted to plaintiff in the said sum of $8,167.70, but which they had not paid and refused to pay, although demanded of them.

And the bill further alleges that notwithstanding the payment of $33,000.00, and the deficiency in acreage and tonnage of coal in said land, which, though acting with due diligence, it did not discover until about two years ago, plaintiff had declined to pay defendants the sum of $1,500.00, claimed as still due them on December 5, 1914, on account of royalty, and payment of which had been demanded on or about January 14, 1915, and that by reason of plaintiff's declination to pay same they were threatening to forfeit said lease and plaintiff believed they would attempt to do so and would also attempt to take possession of said property unless enjoined.

Plaintiff further alleges that defendants are also under paragraph nine of said lease demanding of it payment of the sum of $9,278.70, for the unmined coal in said property, and unless paid they threaten to forfeit said lease on that ground also, and will do so unless restrained therein.

It is also alleged that plaintiff is willing to pay into court to await final action thereon, the $1,500.00 balance claimed by defendants as royalty, and on like condition to also pay into court the taxes on said property for 1914, when ascertained, both of which sums it proffered in the bill.

It is furthermore alleged that though the term of ten years

given by said lease for mining and removing the coal from
the demised premises had expired, plaintiff should in equity
have and be decreed the right, within a reasonable time, to
remove from the premises such of the unmined coal therein
as can be removed, the royalty upon which had been already
paid by it, and also that by virtue of paragraph two of said
lease, giving it the right upon the terms specified to mine
and remove coal from other coal lands through the land and
openings on said leased premises, and to continue for such
term as it as lessee might desire, unless the lease should be
otherwise terminated by its default, defendants should not, as
threatened, be permitted to declare a forfeiture of said lease.

Upon these grounds the relief sought is: First, an ac-
counting for royalties overpaid; second, a decree against de-
fendants for said sum of $8,167.70, excess payments of roy-
alty; third, an injunction prohibiting defendants from for-
feiting said lease, and from interfering with plaintiff in the
possession and enjoyment of said property, and for general
relief.

On the showing thus made is plaintiff entitled to an ac-
counting for royalties paid and a decree against defendants
for alleged overpayments. The correct answer to this ques-
tion depends in part, and independently of the statute of
limitations and other grounds of demurrer urged, on the
proper construction of the provisions in the lease relating to
payments of rents and royalties. They appear to be very
strict and rigorous. While the royalty rate is ten cents per
ton of 2240 pounds, the lessee guaranteed a minimum of at
least $31,000.00 to be paid as stipulated, that is $5,000.00
down upon the signing and delivery of the lease; and there-
after, for the first year, $2,500.00; and for each of the suc-
ceeding nine years a minimum royalty of $3,000.00 per an-
num, payments thereof to be made semi-annually, computed
from the date of the lease. It is manifest that the $5,000,00
down payment constituted the price or bonus for the lease,
but to go back to the lessee upon the conditions named in the
lease. It is clear from the provision relating to payments
that the parties intended to stipulate for a minimum royalty

of $3,000.00 per annum for the entire term, regardless of the quantity of coal mined.

If this is the correct construction of the lease, if indeed it needs construction, the legal effect was a sale of the Pittsburg coal in place, and plaintiff would not be entitled to an accounting and recovery back, unless upon some theory of deficiency in quantity of coal guaranteed or warranted by the lessors. Certainly there are no words of warranty or guaranty of quantity in the lease itself; there is warranty of title, and of quiet and peaceable enjoyment of the demised premises during the term of the lease, but not of quantity or tonnage of coal. It is said that the Pittsburg seam of coal in the vicinity of the leased land generally produces ten thousand tons of coal per acre; but if material we could not, on demurrer, take judicial notice of that fact. When the parties contracted we may assume they both thought there was more than sufficient coal in the land to produce at ten cents per ton the minimum royalty of $31,000.00 guaranteed, but the deed contains no warranty of quantity on the part of the lessors; nor do we think it can be said there was any implied covenant that the lease contained 310,000 or 345,000 tons of coal as contemplated by the parties. The authorities generally agree that there is no such implied warranty in a lease of this kind and that in the absence of mistake, fraud or misrepresentation there is no liability on the part of the lessor for deficiency in quantity or quality of coal. 1 Barringer and Adams, Mines and Mining, 88.

The English and many of the American decisions hold that when in a mining lease the parties contract with reference to a mineral known to exist, but the quantity is unknown, and incapable of certain ascertainment, and the lessee covenants to mine and bring forth a minimum quantity of the product annually, or at other intervals, and to pay a minimum royalty therefor whether mined or not, the contract amounts to a sale of the mineral in the land, and that the lessee is bound to pay the minimum price, whether mined or not, and whether it exists or not. *Timlin* v. *Brown*, 158 Pa. St. 606; *Wharton* v. *Stoutenburgh*, 46 N. J. L. 151; *Marquis of Butte* v. *Thompson*, 13 M. & W. 487; *Ford* v. *Cotesworth*,

L. R. 4 Q. B. 127; *Strelley* v. *Pearson,* 15 L. R. Ch. Div. 113;
*Hill* v. *Sughrue,* 15 M. & W. 252; *McDowell* v. *Hendrix,* 67
Ind. 513; *Powell* v. *Burroughs,* 54 Pa. Rep. 329; White on
Mines and Mining Remedies, section 129.    But when the
contract relates to mineral supposed but not known to exist,
and the covenant of the lessee is to produce and mine a
minimum amount and pay a minimum royalty within and at
stated intervals his covenant is for diligent prosecution of
the work, and to produce the minimum quantity of the min-
erals if it exists, and not whether it exists or not.    *McCahan*
v. *Wharton,* 121 Pa. St. 424; *Bannan* v. *Graeff,* 186 Pa. St.
648; *Diamond Iron Mining Co.* v. *Buckeye Iron Mining Co.,*
70 Minn. 500; *Boyer* v. *Fulmer,* (Pa.) 35 Atl. 235; *Muhlen-*
*berg* v. *Henning,* 116 Pa. St. 138; *Reilly* v. *Daly,* 159 Pa. St.
605; *Fessler* v. *Love,* 48 Pa. 407; White on Mines and Mining
Remedies, section 130; *Gowan* v. *Christie,* 11 L. R. Scotch
and Divorce Cases, 273; 27 Cyc. 718; *Smith* v. *Morris,* 2 Bro.
C. C. 312; *Ridgely* v. *Conewago Iron Co.,* 53 Fed. Rep. 988;
2 Barringer and Adams, Mines and Mining, 105.    In the case
at bar, however, the unconditional covenants or guaranty of
the lessee was a minimum not of coal alone, but of $31,000.00,
in money payable in installments, as agreed.    Certainly the
parties were competent to make such a contract, and when
so made the courts are powerless to prevent enforcement
thereof as made.

But as we have observed, the bill undertakes to allege
fraudulent representation or assurances on the part of the
lessors as to acreage and tonnage of coal and by which plain-
tiff was induced to enter into the contract on its part, and if
not on other grounds rendering the bill good on demurrer.
To this demurrants answer, (1) that the fraud is not well
pleaded; (2) but if well pleaded, or if a case of mutual mis-
take as to acreage or quantity of coal, right of recovery for
over payment or damages, is barred by the statute of limi-
tations, and relief would have to be denied on that ground.

There being no warranty of acreage or quantity of coal,
but of title and quiet and peaceable possession only, right of
action for excess payments of purchase money or royalty
could be founded alone on fraud and deceit alleged, and

would be barred by limitation, in five years from December 5, 1904, the date of the lease, and the date when the cause of action accrued, and by laches, unless the prosecution of that right was in some way, not alleged in the bill, obstructed by defendants; and if barred we need not go to the question of bad pleading also relied on by demurrants.

Counsel for plaintiff say action is not barred because the lack of tonnage was not discovered by proper mining until about two years before the date of the suit. But no reason is alleged why deficiency of acreage was or could not have been discovered before that time, and there is no allegation of obstruction by defendants therein. For deficiency of acreage at least the statute began to run from the date of the deed or lease to plaintiff, the date when the cause of action accrued. *Burbridge* v. *Sadler*, 46 W. Va. 39; *Newberger* v. *Wells*, 51 W. Va. 624, 629.

But as to deficiency in quantity of coal. The alleged representation or assurances of the defendants that there were at least 310,000 or 345,000 tons of coal in the mine, from the very nature of the subject matter of the contract could have been but the expression of an opinion that that quantity of coal could be obtained from the mine. No one in advance of the actual mining and removal of coal could do other than estimate the amount. If the allegation of the bill be true, that plaintiff proceeded promptly and pursued proper mining methods, it had the means and opportunity and must have learned early in the progress of the work the rate of production per acre, and it was better qualified to determine the deficiency in quantity, if any, than defendants were or ever could have been, and as we have noted, there is no allegation of the absence of the Pittsburg vein of coal, the real subject matter of the contract. In argument, and as excuse for having been induced to guarantee the minimum royalty or price of $31,000.00, it was said that the Pittsburg vein of coal in the same vicinity averaged in quantity per acre enough if regular in this land to have produced at least 500,000 tons of coal. If so, how could the alleged representation or estimate of defendants have defrauded or deceived plaintiff? How could defendants have been possessed of superior knowl-

edge to plaintiff? It was impossible, and from the relative positions of lessor and lessee, and the means of knowledge at hand it is impossible that the one should have been defrauded and deceived by the representation or assurance of the other. From anything that is averred in the bill and on the state of the pleadings, we have to assume that the parties were mutually mistaken as to quantity, if not in acreage. In such cases the statute of limitations begin to run from the date of the deed and not from the date of the discovery of the mistake, unless it be alleged and proved that the plaintiff was in some way obstructed therein, and the bill contains no such charge. *Newberger* v. *Wells, supra,* and cases cited. Our conclusion is that the action is barred and that the demurrer to the bill was properly sustained on this ground also.

But what about the right to extend the lease beyond its term, and to take out the unmined coal? The time of the lease had expired before suit was brought. Plaintiff was only given ten years to mine out the coal. Can we by construction or on principles of equity and justice extend the term of the lease to enable the lessee to get out the product? By the terms of the lease he was to mine out the coal within the time given by the instrument. We do not see how, or upon what principles, we can extend the term. Though the lease amounted to a sale of the coal in place, it was upon condition that it should be removed within the term of the lease, and that all that should remain afterwards should be paid for at the rate per ton provided for in the lease. Whether under the facts and circumstances disclosed by the bill defendants will be entitled to recover the price of the coal remaining in the land we need not say; that will be a question for determination when presented in a proper forum having jurisdiction to decide it.

Another proposition urged in support of the bill is that plaintiff is entitled to an injunction to restrain defendants from interfering with its possession of the property under paragraph two of the lease for operations under adjoining and other lands. Our conclusion on this proposition is that by analogy to the law of landlord and tenant, respecting options to renew and extend leases, the lessee must have elected

within the term of the lease to exercise its rights, and that not having done so, it is too late to make such election after the lease has expired. Such a rule is founded on principles of right and justice and nothing is alleged showing why this rule should not be applied in this case. 16 R. C. L. p. 892, section 396; 1 Taylor on Landlord and Tenant, (9th ed.) 423; *McClintock* v. *Joyner*, 77 Miss. 678, 27 So. 837; *Murtland* v. *English*, (Pa.) 112 Am. St. Rep. 747, note 752. Of course if no notice of such election is required by the lease none need be given, but the election must be made within the term, else the right is gone. The bill here does not allege such election by plaintiff.

These holdings we believe dispose of all questions presented by the bill, and we are of opinion to affirm the decree.

*Decree affirmed.*