**NORWOOD LUMBER CORPORATION**
**v. McKEAN et al.**

No. 8986.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 9, 1946.

Decided Feb. 5, 1946.

754

W. A. Bissell, of Scranton, Pa. (Stark, Bissell & Reifsnyder, of Scranton, Pa., on the brief), for appellant.

Edward W. Warren, of Scranton, Pa. (O'Malley, Harris, Harris & Warren, of Scranton, Pa., on the brief), for appellees.

Before GOODRICH, McLAUGHLIN, and O'CONNELL, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from a judgment of the District Court for the Middle District of Pennsylvania entered following a direction for the defendant in a cause tried to a jury.

 Both in his direction to the jury and in a, subsequently filed opinion the learned District Judge seems to say that a plaintiff must prove damages of $3000 or more before it can recover. This is not the law. In a case brought to a federal court on grounds of diversity only, as this one was, the plaintiff must allege an amount in controversy of $3000 or more. But federal jurisdiction is not lost by failure to prove damages to this extent.[1] If the judge became convinced that the suit "really and substantially" or "in good faith" did not involve a dispute of the amount necessary for federal jurisdiction, the statutory course to follow would be dismissal,[2] not an adjudication of the type

---

[1] Thomson v. Gaskill, 1942, 315 U.S. 442, 447, 62 S.Ct. 673, 675, 86 L.Ed. 951: "In a diversity litigation the value of the 'matter in controversy' is measured not by the monetary result of determining the principle involved, but by its pecuniary consequence to those involved in the litigation. Wheless v. St. Louis, 180 U.S. 379, 382, 21 S.Ct. 402, 403, 45 L.Ed. 583; Oliver v. Alexander, 6 Pet. 143, 147, 8 L. Ed. 349."

St. Paul Mercury Indemnity Co. v. Red Cab Co., 1938, 303 U.S. 283, 288, 58 S. Ct. 586, 590, 82 L.Ed. 845: "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the

court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim."

Henneford et al. v. Northern Pacific Railway Co., 1938, 303 U.S. 17, 19, 58 S. Ct. 415, 417, 82 L.Ed. 619, Per Curiam: "The Court is of the opinion * * * that the jurisdiction of the District Court should be tested by the case made by the bill of complaint."

[2] 28 U.S.C.A. § 80, Judicial Code, section 37: "If in any suit commenced in a district court * * * it shall appear to the satisfaction of the said district court, at any time after such suit has been brought * * * that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said district court * * * the said district court shall proceed no further therein, but shall dismiss the suit * * * and shall make such order as to costs as shall be just."

which would bar the plaintiff from later proceeding in a proper forum.

■■ The action was brought to recover damages for breach of contract. Plaintiff purchased a quantity of lumber from the defendants. It paid $200 as part of the purchase price. Before delivery to the plaintiff, defendants sold the lumber to another. Taking the evidence in the light most favorable to the plaintiff, as we must after directed verdict, the defendants' action was a breach of contract. All the operative facts are laid in Pennsylvania, and all questions of substantive law are therefore to be governed by the law of that state. This point seems to have been completely overlooked by the plaintiff who has not cited a single Pennsylvania decision.

■ For a breach of contract the injured party is entitled to nominal damages even when its proof fails to show substantial loss.[3] Further, the plaintiff had paid $200 on the price at the time of the bargain. It was entitled to get that back, of course. Defendants said they had attempted to return the money. But such a tender does not allow the defendants to keep the money, even if the tender was refused; it only affects interest and costs.[4] So the plaintiff was at least entitled to the return of its money, if it failed to prove any further loss.

■ The measure of damages for failure to deliver goods contracted for is set out in the Uniform Sales Act which is law in Pennsylvania.[5] Damages are given, under the statute, for the loss "directly and naturally resulting, in the ordinary course of events, from the seller's breach of contract." If there is an available market for the goods the rule as to damages is crystallized into a rule that recovery is the difference between the contract price and the market price.[6] The contract price here was $55 per thousand feet.

■ Was there, at the time of the events in question, a market where such lumber could be purchased from other sellers than defendants? The plaintiff argues that this fact is a matter of mitigation of damages and cites decisions showing that the burden of showing mitigation is on the party asserting mitigating circumstances. This is the wrong analysis. Mitigating circumstances are not involved here. It lies upon the one asserting damages to prove them.

---

[3] Restatement, Contracts § 328, "Nominal Damages": "Where a right of action for breach exists, but no harm was caused by the breach, or the amount of harm, caused thereby is not substantial or is not so established that compensatory damages will be given under the rule stated in § 329, judgment will be given for nominal damages, a small sum fixed without regard to the amount of harm."

Restatement, Contracts, Pa.Annot., § 328, "Nominal Damages": "Where substantial damages are not sufficiently proven only nominal damages are recoverable. Adams Express Co. v. Egbert, 1860, 36 Pa. 360, 78 Am.Dec. 382; Fessler v. Love & Powell, 1864, 48 Pa. 407; Rineer v. Collins, 1893, 156 Pa. 342, 27 A. 28; Stephens v. Barnes, 1906, 30 Pa.Super. 127; Greenlee v. West, 1919, 71 Pa.Super. 468; Hughes v. Ireland, 1920, 74 Pa.Super. 518; Standard Refrigerator Co. v. Appeldorn & Beatty Co., 1921, 77 Pa. Super. 563." "It is not reversible error for the trial court in a contract case to refuse instruction for nominal damages, no substantial damages being shown. Allen v. Sawyer, 1831, 2 P. & W. 325, 328; Bastian v. Marienville Glass Co., 1924, 281 Pa. 313, 126 A. 798. See, also, Jones et al. v. Jennings Bros. & Co., 1920, 168 Pa. 493, 32 A. 51."

[4] 6 Williston on Contracts 5151, § 1817.

"Effect of tender in discharging obligations" "A right of action on a pecuniary debt is not barred by a prior tender; but the debtor is free from liability for interest and costs from the date of the tender."

[5] 69 P.S. § 312: "Action by buyer for failure to deliver goods

"First. Where the property in the goods has not passed to the buyer, and the seller wrongfully neglects or refuses to deliver the goods, the buyer may maintain an action against the seller for damages for non-delivery.

"Second. The measure of damages is the loss directly and naturally resulting, in the ordinary course of events, from the seller's breach of contract.

"Third. Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver. (1915, May 19, P.L. 543, § 67.)"

See also 1 U.L.A. 369, § 67, the comparable section of the Uniform Sales Act upon which § 312 of the Pennsylvania Act is based.

[6] Third part, f. n. 5.

Plaintiff must show a market price, if there is one, to establish its damages of the difference between contract price and market price. If there is no market price and plaintiff claims damages on some other basis, it must show the facts, both as to absence of market and those on which some other measure of damages may be based.

 The District Court says that there is no evidence from which it could be found there was no available market. But the witness, Sol Hershkowitz, testified that he knew "that country," and had for years, and knew that there was no such thing as lumber like that. He said he had been through the country about two months before the transaction in question. On the negative side, Alexander Loos, one of the defendants, said that he did not know where he could go and buy 50,000 feet of seasoned oak lumber in the community.

This testimony tends to show lack of available market at which one could purchase such lumber in the community. The jury might not have accepted it, or the defendants might have smothered it with contrary testimony. But there was enough on the point to carry the case, on this issue, to the jury.

 Then, assuming that it had shown that there is no place where it could buy such lumber from another seller, the plaintiff sought to show its damages by proving what it could have made in reselling the lumber, had the defendants made delivery as agreed. This was permissible on the assumption just made.[7] The plaintiff attempted to make such proof, but its various offers of testimony upon the point were refused. (1) It offered to show that the president of the plaintiff corporation got an order for part of the lumber pur-

---

[7] Gloekler v. Painter, 1922, 272 Pa. 131, 134, 116 A. 110, 111: "The only question requiring discussion is raised in the third assignment of error: What is the true measure of damages when the vendee has paid part of the purchase price agreed upon, or has transferred property to the vendor on account thereof, when the latter fails to comply with the contract he had made? The amount of recovery is limited by the loss directly or naturally resulting, in the ordinary course of events, from the seller's breach. In the absence of special circumstances, this is determined by the difference between the market and contract price at the time fixed for delivery, if there is an available market. Sales Act May 19, 1915, P.L. 543, § 67 (69 P.S.Pa. § 312]. Where, however, the article in question cannot be so obtained—here neither the manufacturer nor his agent could supply—the measure is the actual loss which the vendee can show he has sustained. McHose v. Fulmer, 73 Pa. 365; Kinports v. Breon, 193 Pa. 309, 44 A. 436; Seward v. Pennsylvania Salt Mfg. Co., 266 Pa. 457, 109 A. 617; Vilsack v. Wilson, 269 Pa. 77, 112 A. 17."

Seward v. Pennsylvania Salt Mfg. Co., 1920, 266 Pa. 457, 462, 109 A. 617, 618: "Of course, it may not at all times be possible to establish a general selling price, and in such cases actual market value may be shown by proof of facts and circumstances fixing to a reasonable degree of certainty the amount the property would bring if offered at ordinary sale (B. P. Ducas Co. v. Bayer Co., Sup., 163 N.Y.S. 32, 40) * * * It does not appear that the product in question was not obtainable in the open market. If it did, plaintiff might recover his actual damages; that being the rule in such case. Pittsburgh Sheet Mfg. Co. v. West Penn. Sheet Steel Co., 201 Pa. 150, 50 A. 935; Theiss v. Weiss, 166 Pa. 9, 11, 31 A. 63, 45 Am.St. Rep. 638; Culin v. Woodbury Glass Works, 108 Pa. 220; 35 Cyc. 641, 642; 2 Sedgwick on Damages (9th Ed.), § 734, p. 1534." The court goes on to add "how can it be determined that an article without market value can be resold at a profit? The chances thereof are too speculative to form the basis of a recovery * * *" In the instant case the assumption, supra, as to lack of market is limited in its scope of reference to a buyer's lack and not a seller's. Hence the applicable rule is that of the first quotation concerning a "product * * * not obtainable" rather than that of the second quotation which is concerned with an "article without market value". The court rounds off its discussion by stating, "Moreover, anticipated profits on a resale are not recoverable unless in contemplation of the parties when the original contract was made (Clyde Coal Co. v. P. & L. E. R., 266 Pa. 391, 75 A. 596, 26 L.R.A.,N.S., 1191; David v. Whitmer & Sons, 46 Pa. Super. 307) * * *." In the situation before us, the $200.00 check used to bind the agreement had on its face "Norwood Lumber Company". The inference that a lumber company purchases lumber for resale is nowhere rebutted. Somewhat to the contrary, the defendant's brief speaks constantly of anticipated profits from resale; in objecting to the profits, the requisite concept of resale is a necessary presupposition.

chased from defendants (14,000 feet of the 50,000) of 12½¢ per foot.[8] This was rejected. The defendants say that the evidence would have been misleading because the part in question was the cream of the lot. Maybe it was; that fact could have been brought out. We think the testimony should have been received. If accepted by the jury, it showed the plaintiff's loss as to part of the lot involved. The plaintiff could not recover damages for sales made above lawfully fixed ceiling prices.[9] We have no way of knowing whether this sale would have been such a violation, though defendants urged the point in their objections when the testimony was offered. (2) Plaintiff offered to prove by the witness Hershkowitz what the selling prices of this class of lumber were at the time prices were frozen in 1942 by OPA order.[10] This was not necessary or helpful. It called for prices of the year before. Nor was the testimony of an OPA representative required to establish the ceiling prices at which lumber was fixed the next year, unless the testimony would have been helpful in explaining the regulations of which the court should have taken judicial notice. If the plaintiff may properly ask for profits, it is clear that the difference between what it paid and what it would be allowed to sell for, plus evidence that there was a ready market in which it could resell, would form an appropriate measure of damages.

We do not mean to say that a plaintiff buyer can recover prospective profits at its option. The usual measure of damages is established by the statute as already stated. But if the plaintiff proves lack of a market where it can get the goods from another, it is thrown perforce to a more elaborate measure of damages. We think the trial court unduly restricted the plaintiff in its attempt to prove its case in this instance.

The judgment of the District Court is reversed and the case remanded for a new trial.

---

[8] Counsel for plaintiff worded his offer of proof as follows: "We intend to show by this witness now on this stand that he took orders against this lumber. He got an order from Grosfeld House Inc. for 14,000 feet of this lumber at 12½ cents a foot and the same will be offered in evidence." When this was rejected, he reworded it to show that the orders were taken "against this lumber that he had purchased from Loos & McKean" and that "he was unable to fill this order and make profitable sale because of the fact that Loos & McKean refused to deliver the merchandise we had purchased."

[9] 1 Sutherland on Damages (3rd ed.) 12, § 5 "It may be assumed as an undisputed principle that no action will lie to recover a demand, or a supposed claim for damages, if, to establish it, the plaintiff requires aid from an illegal transaction, or is under the necessity of showing and depending in any degree upon an illegal agreement to which he was a party."

[10] Plaintiff's counsel offered to "show by Mr. Hershkowitz that the conditions of the lumber market in this locality was such that it was a buyer's market and that there was no difficulty whatsoever in selling the lumber at the ceiling prices." And again, a bit further on, "We propose further to show that you don't put OPA prices on 'Log run'. There is no such thing in the OPA as Log run."