## Corporate Net Income Tax Apportionments

SIDNEY MARGULIES, Deputy Attorney General, and THOMAS D. MCBRIDE, Attorney General, December 24, 1957.—We are in receipt of your letter requesting advice as to whether, under section 2-2(b) of the Corporate Net Income Tax Act,[1] a Delaware corporation may report net royalties received from the lease of coal lands located in West Virginia as proceeds received from the sale of capital assets situated outside of the Commonwealth.

Section 2 of the Corporate Net Income Tax Act, supra, provides that:

"2. In case the entire business of any corporation, . . . is not transacted within this Commonwealth, the tax imposed by this act shall be based upon such portion of the net income of such corporation . . . as defined in clause one hereof, as may be determined by allocations and apportionments made as follows: . . .

"(b) Gains realized and losses sustained from the sale or exchange of capital assets, if such assets consist of real estate or tangible personal property situ-

---

[1] Act of May 16, 1935, P. L. 208, as last reënacted and amended by the Act of March 6, 1956, P. L. (1955) 1247, sec. 1, 72 PS §3420b2(b).

ated outside of the Commonwealth, shall not be allocated in any part to this Commonwealth.

"(c) The remainder of such net income shall . . ."

(The subsequent paragraphs provide for the apportionment of all income other than from the sale of capital assets by the use of three fractions to determine that amount of income subject to the tax.)

Clause one of the act, supra, referred to in the quotation above, defines "net income" as "taxable income . . . as returned to and ascertained by the Federal Government". This phrase has been defined by the Pennsylvania Supreme Court in the case of Commonwealth v. Electrolux Corporation, 362 Pa. 333, 67 A. 2d 105 (1949), by adoption of the explanation used in the case of Commonwealth v. Warner Bros. Theater, Inc., 51 Dauph. 310 (1941), affirmed 345 Pa. 270, 27 A. 2d 62 (1942):

"We think it can have only one meaning, namely, ascertaining the *amount* of net income subject to Federal tax." (Italics supplied.)

Therefore, while the Commonwealth is bound to use the taxable income as reported to and ascertained by the Federal Government as the tax base, it is bound to do so only to the extent of measuring the *amount* of net income. However, the characterization of that income as between gains or losses from the sale of capital assets and other types of income is governed solely by State law. The Federal statutes and the decisions interpreting them are merely persuasive authority in clarifying areas in which the State law is not clear.

The Corporate Net Income Tax Act, supra, does not define the term "capital asset"; nor has there been any Pennsylvania court decision defining the term. However, it is generally recognized that the definition provided in the Federal Internal Revenue Code

represents the most widely used concept.[2] Section 1221 of the 1954 Internal Revenue Code provides in pertinent part that (26 U. S. C. §1221):

". . . 'Capital asset' means property held by the taxpayer (whether or not connected with his trade or business), but does *not* include:—

"(1) Stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." (Italics supplied.)

Adopting this definition of a "capital asset", we now turn to the question of whether coal lands come within the scope of the term as so defined.

Under Pennsylvania law (as well as that of West Virginia) when a lease of coal properties provides that as the lessee removes the coal, he is to pay a royalty to the lessor and when the lease also provides for the taking of all the coal, such lease constitutes a sale of tangible property in the form of coal in place: Shenadoah Borough v. Philadelphia, 367 Pa. 180, 79 A. 2d 433 (1951); National Coal Company v. Overholt, 81 W. Va. 427, 94 S. E. 735 (1917). This rule of law is acknowledged by your department to be applicable to the lease involved in this particular situation. However, while the term "capital asset" may include tangible property such as coal in place, it does not necessarily follow that the gain realized from every such sale of coal in place constitutes "gain" from a "sale of capital assets".

As the term has been defined in this opinion, "capital assets" do not include property which is the "stock in trade of taxpayer" or "property held by the taxpayer primarily for sale to customers in the ordinary

---

[2] See 1 P-H State and Local Taxes, Pa. (1945), para. 9135.

course of his trade or business". In this particular instance the taxpayer corporation has reported on its franchise tax report that the "Purpose of the Corporation, etc., as set forth in the Charter" is "generally owning and leasing to others coal and mineral lands". In view of this declaration on the part of the taxpayer and in view of the legal significance of this type of lease, the leasing of coal lands by this corporation constitutes the sale of property "held by the taxpayer primarily for sale in the ordinary course of . . . business" and, therefore, does not constitute the sale of "capital assets".

Our attention has been directed to certain sections of the 1954 Internal Revenue Code which are believed to be relevant to this question, e.g., section 631(c), which provides that (26 U. S. C. §631):

". . . In the case of the disposal of coal (including lignite), held for more than 6 months . . . under any form of contract by virtue of which such owner retains an economic interest in such coal, the difference between the amount realized from the disposal of such coal and the adjusted depletion basis thereof . . . shall be considered as though it were a gain or loss, as the case may be, on the sale of such coal . . .".

This section does no more than provide for the treatment of leases of coal property in a manner similar to that provided for under Pennsylvania Law. (But this section of itself does not change the lease into a sale of a "capital asset".)

It is further acknowledged that section 1231 of the 1954 Internal Revenue Code provides that:

"(a) GENERAL RULE—If, during the taxable year, the recoginzed gains on sales or exhanges of property used in the trade or business . . . exceed the . . . losses from such sales . . . , such gains and losses *shall be considered as gains and losses . . . of capital assets held for more than 6 months. . . .*

"(b) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS—For purposes of this section . . .

"(2) TIMBER OR COAL—Such term includes timber and coal with respect to which section 631 applies." (Italics supplied.)

The effect of section 1231(*b*)(2) is to treat gains and losses from the sale of coal under section 631 as if they were gains and losses of capital assets. This is an express statutory relief provision in the Federal Internal Revenue Code which is in addition to section 1221 which defines "capital assets". It does not change or add to the definition of "capital assets" found in section 1221. Even if Pennsylvania follows Federal law in defining the term "capital assets" in the Commonwealth's Corporate Net Income Tax Act, this particular income from the lease of coal lands would still not be subject to allocation as a gain from the sale of a capital asset.

For the purpose of argument only, granting the broadest possible definition of the term "capital assets" under the Federal Internal Revenue Code as including sections 631 and 1231 within the concept, the result is merely a characterization of income under Federal law and not a change in the amount of net income as reported to the Commonwealth. Therefore, the Commonwealth is not bound by this definition. Rather, the Commonwealth, in the absence of specific legislative authority, must confine the meaning of its statute to the most widely recognized definition of the term "capital asset" so as not to include property which is stock in trade of the taxpayer or held primarily for sale to customers in the ordinary course of business.

Therefore, you are accordingly advised that a corporation may not report net royalties received from the lease of coal lands as gains from the sale of capi-

tal assets consisting of tangible property situated outside of the Commonwealth not to be allocated in any part to this Commonwealth, under section 2-2($b$) of the Corporate Net Income Tax Act, supra. A corporation must report such net royalty income as other income subject to apportionment under section 2-2($c$) of the Corporate Net Income Tax Act, supra.