# William Fairchild, Plff. in Err., *v.* Henry S. Fairchild.

A demise of all the coal under the surface of a specified piece of land is a sale of the coal.

(Argued April 15, 1887. Decided April 25, 1887.)

January Term, 1887, No. 413, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Error to the Common Pleas of Luzerne County to review a judgment for the defendant in a case stated in an amicable action of assumpsit. Affirmed.

Cited in Genet v. Delaware & H. Canal Co. 122 N. Y. 527, 25 N. E. 922; Genet v. Delaware & H. Canal Co. 136 N. Y. 604, 19 L. R. A. 127, 32 N. E. 1078; Finnegan v. Pennsylvania Trust Co. 5 Pa. Super. Ct. 124, 130, 41 W. N. C. 23, 28 Pittsb. L. J. N. S. 68; Hosack v. Crill, 18 Pa. Super. Ct. 98; Tripp v. Miller, 4 Kulp, 517; Hancock's Estate, 7 Kulp, 37; Maffet's Estate, 8 Kulp, 185; Maffet's Estate, 9 Kulp, 137.

NOTE.—For effect of sale of coal underlying land, see note to Hope's Appeal, 1 Sad. Rep. 307.

The case stated was as follows:

Now, January 5, 1887, it is agreed that an amicable action of trespass on the case in assumpsit in the above-entitled cause be entered in said court, and the following facts are agreed upon as a case stated for the opinion of the court in the nature of a special verdict, either party reserving the right to a writ of error to the judgment of said court.

In the months of July and August, 1873, John Fairchild, late of said county, being seised in fee in possession of some 50 acres of coal land situate therein, executed to the Susquehanna Coal Company a so-called lease of the coal in and under said land, the same being duly recorded in the recorder's office of said county, and a copy of which is hereto attached and made part of this case, the same being marked "exhibit A."

Shortly thereafter, and during the lifetime of the said John Fairchild, the said company, by means of shafts and slopes opening upon the surface of adjoining lands and connected with tunnels or subterraneous passages, entered upon and took possession of the veins and measures of anthracite coal under said 50 acres, and by means of gangways, headings, breasts, or chambers, leading from said tunnels, slopes and shafts, and cut and driven into said veins and measures, began and have since continued, and are now continuing the mining, quarrying, removing, transporting, shipping, and selling of the anthracite coal under the land described in said so-called lease.

On September 17, 1879, the said John Fairchild died intestate, seised of said land, subject to said so-called lease, leaving to survive him a widow, Martha Fairchild, and by her five children and heirs at law—all of full age, namely: Anna E. Fairchild, intermarried with William Fairchild, the plaintiff above named; Martha L. Fairchild, intermarried with O. F. Ferris.; John M. Fairchild, Henry S. Fairchild, the defendant above named, all of said county, and Alfred Fairchild, of the state of Michigan.

On October 16, 1879, letters of administration on the estate of said John Fairchild were granted by the register of said county, to the said John Fairchild and the said Henry S. Fairchild, defendant, who on April 14, 1884, filed a partial account of their administration, which was confirmed by the orphans' court of said county and distribution had thereon in said last-named court; but said administrators have not yet filed a final

account, and are unable so to do at this time by reason of certain uncollected debts due their estate for money loaned by their decedent.

On January 20, 1883, the said Anna E. Fairchild died intestate, leaving to survive her a husband, William Fairchild, the above-named plaintiff, and by him four children and heirs at law, namely: Monroe Fairchild, of full age, and W. H. Fairchild, Edna L. Fairchild, and Edith L. Fairchild, then and now minors, having for their guardian O. F. Ferris, duly appointed by the orphans' court of said county. William Fairchild, the plaintiff, is the administrator of the estate of said Anna E. Fairchild, and has not yet filed or settled an account of his administration.

On January 31, 1883, the said Martha Fairchild, surviving widow of said John Fairchild, died intestate, leaving to survive her children and grandchildren, heirs at law, namely: the said John M. Fairchild, Henry S. Fairchild, Alfred Fairchild, and Martha L. Ferris, children, and the said Monroe Fairchild, W. H. Fairchild, Edna L. Fairchild, and Edith L. Fairchild, grandchildren, being children of a deceased daughter, the said Anna E. Fairchild. Samuel Line of said county is the administrator of the estate of said Martha Fairchild, deceased.

On account of coal mined, removed, shipped, and sold as aforesaid by the said, the Susquehanna Coal Company under said so-called lease during the four periods following, to wit: first, during the lifetime of the said John Fairchild; second, during the period from the date of his death to January, 1883, the date of the deaths of said Anna E. and Martha Fairchild, and third, from January, 1883, to January, 1885, and fourth, from January, 1885, to the present time, the said company has paid as so-called rents or royalties certain moneys as follows: for the first period it paid the said John Fairchild for his own use, and for the second, third and fourth periods it paid to the said Henry S. Fairchild, defendant, as agent or trustee for the use of the parties who should legally be thereunto entitled; and the said Henry S. Fairchild paid over said moneys received during said second and third periods as follows: during said second period he paid one third to the said Martha Fairchild, widow, and to himself and said Anna E. Fairchild, Martha L. Ferris, John M. Fairchild, and Alfred Fairchild each one fifth of two thirds; and during said third period he paid one fifth

each to himself and said Martha L., John M., and Alfred, two thirds of one fifth to said William Fairchild, plaintiff, and one third of one fifth to the four children of said Anna E. Fairchild in equal proportions, of whom three were represented by their said guardian, O. F. Ferris.

During said fourth period the amount of said so-called rents or royalties paid by said company and received by said Henry S. Fairchild, defendant, for the uses aforesaid is, after deducting certain expenses paid for surveying, the sum of $17,360.42, of which no part has ever been paid to the plaintiff, William Fairchild, or to any of the children of said Anna E. Fairchild or their guardian.

The said Henry S. Fairchild, defendant, and John M. Fairchild, administrators as aforesaid, have never accounted as administrators for any of the so-called rents or royalties received by the defendant as aforesaid. There are no unpaid debts against either of the estates of said John Fairchild, Anna E. Fairchild, or Martha Fairchild, and each died solvent, irrespective of any interest in said coal land—so-called lease or royalties.

If, under the facts as above stated, the court be of the opinion that said sum of $17,360.42 is, in contemplation of law, to be regarded as rent, or of the nature thereof, accruing during the fourth period, *supra,* and incident to and issuing out of a coal estate, in the land described in said so-called lease, remaining in said John Fairchild at the time of his death, and descending to his heirs at law subject to the interest of his said surviving widow, Martha Fairchild, under the intestate laws of this commonwealth, and that on the death of the said Anna E. Fairchild her surviving husband, the plaintiff, became entitled as tenant by the curtesy to the undivided one fifth of said coal estate subject to the interest of said Martha Fairchild, surviving widow, then judgment to be entered for the plaintiff for the sum of $3,472.08. But if the court be of the opinion that the plaintiff, as surviving husband aforesaid, by reason of said Martha Fairchild's survivorship after the death of said Anna E. Fairchild, became entitled as tenant by the curtesy to only an undivided one fifth of an undivided two thirds of said coal estate, then judgment to be entered for the plaintiff for the sum of $2,314.72.

If, however, the court be of the opinion that said sum of $17,-360.42 is, in law, to be regarded as purchase money or in the

nature thereof of real estate sold by the said John Fairchild in his lifetime, and collectible by his said administrators, to be by them accounted for as such to the orphans' court and distributed by the latter as personal estate of the said John Fairchild, deceased, to his four surviving children and to the estates of his deceased daughter, Anna E. Fairchild, and of his deceased widow, Martha Fairchild, according to the intestate laws of this commonwealth, then judgment to be entered for the defendant.

The costs to follow the judgment.

"Exhibit A," to which reference was made in the case stated, was as follows:

This indenture, made the 25th day of July, 1873, between John Fairchild, of the township of Newport, Luzerne county, Pennsylvania, of the one part, and the Susquehanna Coal Company, of the other part, Witnesseth: that the said John Fairchild, in consideration of the covenants to be kept and the rentals to be paid by the said Susquehanna Coal Company, hath demised, leased, and to mine let, and by these presents doth demise, lease, and to mine let unto the said Susquehanna Coal Company and their successors and assigns all the anthracite coal in, under, and upon all that certain piece or parcel of land situate in the township of Newport, Luzerne county, aforesaid, bounded and described as follows: Beginning in the line between lots Nos. 2 and 3 of the first tier, first division of lots in said township, at a common corner of the land hereby demised and land now or late of Solomon Fairchild, thence along said line north $6\frac{1}{4}$ degrees, west 62 rods to a corner in the center of the public road; thence along the center of said public road by its several courses and distances to the township line between Hanover and Newport; thence along the said line south $17\frac{1}{4}$ degrees, east 125 4/10 rods to a corner of lands now or late of Solomon Fairchild, and thence along the said land south $70\frac{1}{2}$ degrees, west 84 6/10 rods to the place of beginning, being parts of lots Nos. 1 and 2 in the first tier of the first division of lots in the certified township of Newport, and containing 50 acres 110 6/10 perches strict measure. Together with the right to mine, quarry, and remove all the coal in, under, and upon the said tract of land, but without opening thereto or transporting the same upon or across the surface of the said land. To have and to hold the said coal and the mining rights and privileges

hereby granted with the appurtenances unto the said Susquehanna Coal Company and their successors and assigns until all the merchantable coal accessible by careful, prudent, and skilful working shall be mined out and exhausted.

And the said Susquehanna Coal Company, in consideration of the premises, do hereby for themselves and their successors and assigns covenant and agree to and with the said John Fairchild and his heirs, executors, administrators, and assigns, in manner as follows, to wit: first, that the rental for all coal mined under this lease shall be at the rate of 25 cents per ton of the size and pounds hereinafter specified; second, that for all coal mined and removed during the year ending July 1, 1874, they will pay at the said rate of 25 cents per ton; that for the year ending July 1, 1875, and for and during each and every subsequent year during the term, they will mine and remove not less than 12,000 tons of coal, or failing so to do will nevertheless pay for such number of tons, so that the minimum annual rental shall not be less than $3,000; Provided, however, That if during any year such minimum annual rental shall be paid and sufficient coal at the rate aforesaid shall not be mined and removed, the deficit may be mined and removed in any subsequent year of the term; third, that all the rentals under this lease shall be payable quarterly, to wit: on the first days of October, January, April, and July in each year; fourth, that under this lease a ton shall consist of 2,240 pounds, and that the rentals aforesaid shall be payable on all coal which will pass over a screen of a half-inch mesh. All coal passing through a screen of such dimension shall be regarded as "pea coal," and such coal may be used free of charge for the purpose of driving the machinery by which the said coal is mined and prepared, and shall be free from rental except when such coal shall be actually sent to market, when the rental shall be 8 cents per ton, payable quarterly, in addition to the rentals aforesaid; fifth, that the said lessees shall pay all taxes or imposts, United States and local, which shall be assessed upon the coal in place or as it is mined; sixth, that all the mining operations shall be conducted with prudence, skill, and care, so that all the coal may be won which can be taken without damages to the mines, and that in all gangways and chambers proper supports and pillars may be so left as to protect as well the surface as the overlying veins of coal; seventh, that the amount of coal mined and removed

may be ascertained by reference to the weights returned by transportation companies for coal thus shipped and to the sales books for coal sold on the ground to local buyers, or by keeping an accurate account of the number of cars mined, making proper allowances for slate and dirt, verifying the accuracy of the accounts, if desired, by ascertaining the number of cubic yards of coal mined and removed; eighth, that as well the mines themselves as also the mining, shipping, and sales books of the said lessees shall at all proper times be open to the inspection of the lessor and his engineers and agents for the purpose of ascertaining the condition of the mines and the amount of coal mined and removed; and also that the said lessees will furnish from time to time, on the request of the said lessor, maps of the mines, showing their actual condition; ninth, that the said lessees shall and will furnish annually to the said John Fairchild, his heirs and assigns, at the chutes nearest to or most convenient of access for said lessor, his heirs and assigns, 25 tons of coal of such sizes as may be desired at the price of $1.50 per ton, upon which coal no royalty shall be charged; tenth, that it is specially understood and agreed that if at any time an instalment of rent or any part thereof shall become due and remain unpaid for the space of sixty days, then and in such case the said John Fairchild, his heirs and assigns, having first given to the said lessees, their superintendent or agent, thirty days' notice of his or their intent so to do, may at his or their option declare the term of this lease at an end; and thereupon all rights of the said lessees, their successors or assigns, shall absolutely cease and be determined, and the said lessor, his heirs or assigns, may resume possession of the demised premises with the improvements and appurtenances by legal process, or summarily and without legal process, at his or their option.

And in case a cause of forfeiture by reason of nonpayment of rent shall at any time arise under the aforesaid clause and such cause shall expressly or by implication be waived and the forfeiture be not enforced, the right of forfeiture shall be reserved and be in force whenever and so often as a new cause by reason of the nonpayment of a future instalment for the period aforesaid, shall arise. And it is further agreed by and between the parties aforesaid in manner as follows: that the said lessees, their successors and assigns, shall have the right to open through the surface of the said lands, the coal under which is hereby

demised, such air shafts as may be necessary for the ventilation of the mines; provided, however, that they shall be placed at suitable distances from any dwelling house, and shall be made with as little damage as possible and be properly secured upon the outside.

The instrument was duly executed and acknowledged.

Upon the entry of judgment for the defendant in the court below, the following opinion was delivered by RICE, P. J.:

We are of opinion that the sum of $17,360.42, mentioned in the case stated, is in law to be regarded as purchase money of real estate sold by John Fairchild in his lifetime and collectible by his administrators, to be by them accounted for as such to the orphans' court, and distributable by the latter as personal estate of the said John Fairchild, deceased, to his four surviving children and to the estates of his deceased daughter, Anna E. Fairchild, and of his deceased widow, Martha Fairchild, according to the intestate laws of this commonwealth. Stoughton's Appeal, 88 Pa. 198; Scranton v. Phillips, 94 Pa. 15–22; Sanderson v. Scranton, 105 Pa. 469; Delaware, L. & W. R. Co. v. Sanderson, 109 Pa. 583, 58 Am. Rep. 743, 1 Atl. 394; Hope's Appeal, 1 Sad. Rep. 307.

Therefore, pursuant to the stipulations of the case stated, it is ordered that judgment be entered for the defendant.

The assignments of error specified the entry of the judgment.

*George K. Powell, E. P. & J. V. Darling,* and *S. P. Wolverton,* for plaintiff in error.—Neither party to the lease in question thought at the time it was executed that it was a deed, and until the cases of Sanderson v. Scranton, 105 Pa. 469, and Delaware, L. &. W. R. Co. v. Sanderson, 109 Pa. 583, 58 Am. Rep. 743, 1 Atl. 394, the legal profession, accustomed to drawing such instruments, never for a moment thought that they conveyed the fee of the coal.

The grant of a right to mine coal for so much per ton is a lease. Offerman v. Starr, 2 Pa. St. 394, 44 Am. Dec. 211; Greenough's Appeal, 9 Pa. 18.

These instruments of writing have for years been denominated, by the parties to them, as coal leases; they were intended

as leases and not as conveyances; the words used in them are proper words and create a leasehold estate, and, technically, are incapable of creating anything else; both lessor and lessee have always supposed them to create such an estate and have invested large amounts of money on the strength of such construction. It is because of these important questions that counsel for plaintiff in error have again brought this question to the attention of the court.

In Greenough's Appeal, 9 Pa. 18, the operative words of the lease were: "May have the privilege of taking coal out of the P. mine, he paying to the respective owners thereof . . . their respective proportions of the sum of 25 cents per cubic yard, of coal so taken out as rent for the said privilege." The supreme court held that this was a granted right to mine coal for so much per ton, and the *redditus* was consequently a certain rent, for which a distress might have been made.

In Offerman v. Starr, 2 Pa. 394, 44 Am. Dec. 211, the owner passed the right to mine coal at a rent payable on each ton of coal taken out, reserving the right to examine the mine and re-enter on nonpayment of rent or neglect; and it was held that a right to use a mine necessarily implies a right to possess it; and a grant of the use and possession, in consequence of something to be rendered, is exactly what constitutes a lease of the thing to be possessed.

In Griffin v. Fellows, 81* Pa. 114, the words of the lease were: Grant, demise, let, and to farm let, for 999 years; "to have and to hold, the above granted and demised premises, with every privilege, right, member, and appurtenance whatsoever, to the same premises belonging or in anywise appertaining, whether ways, waters, water courses, mines, or minerals." This was held to be a coal lease.

In Miners' Bank v. Heilner, 47 Pa. 452, the question arose whether the rent due under a coal lease was not a prior lien under the act of April, 1830, relating to mortgages, so that the mortgage of the leasehold would be discharged by a sheriff's sale, under an execution against the lessee. The supreme court said in speaking of this character of leases: "Millions of money are being invested in coal leases and mortgages, for very large sums often encumber them; still they are mere leasehold estates —chattel interests, which may be sold by a constable on an execution of a justice of the peace; and if such a judicial sale

should be held to devest mortgages where a $1 rent remains unpaid, it would strike a death-blow, not only at the best securities known to our law, but at one of the largest and most productive branches of our industry."

In Turner v. Reynolds, 23 Pa. 199, a son took possession of a coal vein under a parol agreement with his father, who claimed the whole tract on which a large vein was then opened, that he should have a smaller vein if he opened it. A lease was afterwards made by the father to the son and others, by which the lessor "demised, let, and to mine let" all the tract of land known as No. 49 (the number of the lot on which the vein was opened) containing 160 acres or thereabouts, "and the coal bed thereon and now opened." Held, that after the lease the son was in possession as tenant and not as owner.

In Moore v. Miller, 8 Pa. 272, it was held that in estimating the language which constitutes a lease, the form of words used is of no consequence; it is not necessary that the term lease should be used. Whatever is equivalent will be equally available if the words assume the form of a license, covenant or agreement, and if the other requisites of a lease are present.

In Gartside v. Outley, 58 Ill. 210, 11 Am. Rep. 59, a lease was granted by the Bellville & Illinoistown Railroad Company to Twist, for an indefinite period, with the permission to take all the coal contained in the said land for the rents therein stipulated, with a clause of forfeiture for noncompliance by the lessee. The court said: "It is insisted that the instrument entered into by the parties is not a lease; that it conveys a higher estate. The counsel does not define the nature of the estate which he insists is created, except to indicate that the grant is in the nature of a 'servitude,' to which the company's land was subjected for an indefinite period. We think the fair construction to be given to that instrument is that it is in the nature of a lease, and creates only the relation of lessor and lessee."

Whatever words are sufficient to explain the intent of the parties, that the one should devest himself of the property and the other come into it for a determinate time, whether they run in the form of a license, covenant, or agreement, will, in construction of law, amount to a lease as effectually as if the most proper and technical words were made use of for that purpose. Watson v. O'Hern, 6 Watts, 362.

*L. H. Bennett,* for defendant in error.—This conveyance constituted a sale by John Fairchild, in his lifetime, of his coal estate to the Susquehanna Coal Company. Kier v. Peterson, 41 Pa. 359; Funk v. Haldeman, 53 Pa. 244; Stoughton's Appeal, 88 Pa. 198; Delaware, L. & W. R. Co. v. Sanderson, 109 Pa. 583, 58 Am. Rep. 743, 1 Atl. 394; Sanderson v. Scranton, 105 Pa. 469.

We are told in the argument for the plaintiff in error that until the cases of Sanderson v. Scranton, 105 Pa. 469, and Delaware, L. & W. R. Co. v. Sanderson, 109 Pa. 583, 58 Am. Rep. 743, 1 Atl. 394, the legal profession, accustomed to drawing such instruments, never thought that they conveyed the fee of the coal. This statement is questionable, in view of the action of the profession, in this county at least, in constantly refusing to advise loans on the security of the mortgage of the so-called lessor, unless the mortgagee receives, at the same time, an assignment of the royalties, with notice to the persons obligated to the payment of such royalties; and besides the statement in question involves the fault of the legal profession, and not a change in the law.

It is urged that if the present construction be adhered to, parties who suppose they yet hold the legal title of a lessor will find themselves without protection for purchase money, save in the personal covenants of a vendee. The protection which it is assumed has thus been taken from innocent lessors will, in all cases when the necessity for such protection arises, still be found to exist in the real covenants, conditions, and clauses of forfeiture, invariably written in the conveyance itself, for the avowed purpose of securing payment of purchase money, and thus appearing of record as notice to everyone. All persons interested in such payments may enforce them against the land, and for that purpose maintain ejectment on such covenants, conditions and clauses.

This principle is enunciated in various cases, of which a few are: Bear v. Whisler, 7 Watts, 144; Heist v. Baker, 49 Pa. 9; and Strauss's Appeal, 49 Pa. 353; Perry v. Scott, 51 Pa. 125; Kensinger v. Smith, 94 Pa. 384.

The rents, or payments, for coal mined and to be mined, under a sale, by a married woman, of such coal, with the right to mine and remove it, are personal property, payable to her executor on her death; and no part thereof belongs to her surviving

husband as tenant by the curtesy. Hope's Appeal, 1 Sad. Rep. 307.

PER CURIAM:

That a demise of all the coal under the surface of a specified piece of land is a sale of the coal is now too well fortified by authority to be successfully questioned in Pennsylvania.

The cases affirming this conclusion are cited in the opinion of the learned judge, and fully sustain the judgment he entered on the case stated.

Judgment affirmed.