## Hollenback Coal Company, Appellant, *v.* Lehigh & Wilkes-Barre Coal Company.

*Mines and mining—Coal lease—Sale of coal—Contract.*

By a contract in writing an owner of coal demised, leased and to mine let to another "all that vein or seam of coal known as the Baltimore vein, and the veins, or seams of coal underlying" it. By another clause it was agreed "that at the end of said term the said party of the second part shall leave the mines worked under this lease in such good condition and so far prepared for future workings as that at least one hundred thousand tons of coal can be mined the next succeeding year from the then existing coal workings without injury to, or robbing of the mines." In still another clause it was stipulated that the lessee in consideration of certain rentals should be permitted to "mine and remove from said premises of the veins hereby leased, 100,000 tons of coal of 2,240 pounds each, of a size which will pass over a screen of five-eighths inch mesh in each and every year of said term." *Held*, that the lessee could only remove after mining, such broken coal as would pass over the five-eighths inch meshes.

MITCHELL, C. J., dissents.

Argued April 16, 1907. Appeal, No. 20, Jan. T., 1907, by plaintiff, from decree of C. P. Luzerne Co., May T., 1903, No 5, dismissing bill in equity in case of The Hollenback Coal Company v. The Lehigh & Wilkes-Barre Coal Company. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Bill in equity for an injunction.

The bill set forth :

That on December 30, 1869, the plaintiff, a Pennsylvania corporation, leased, demised and to mine let unto the defendant's predecessor " all that vein or seam of coal known as the

Baltimore vein, and the veins or seams of coal overlying the Baltimore vein," upon certain lands of the plaintiff, together with certain surface, which lease and the several extensions thereof, ended October 1, 1900.

That during the term of said lease a certain culm bank, known as the Diamond bank, accumulated on a portion of said surface as a result of the mining operations in the Baltimore and overlying veins.

That under said lease only coal of such size as will pass over a five-eighths inch mesh was intended to be sold, and everything under that size and coal thrown out and not marketed by the lessee belonged to the lessor. That, even if this were not the case, said coal became the property of the lessor after the termination of the lease.

That plaintiff leased to the defendant the veins of coal underlying the Baltimore on April 1, 1887, and also part of same surface, and that said surface was so again leased only to enable the lessee to mine the coal underlying the Baltimore.

That on February 25, 1903, plaintiff notified defendant of its desire to reclaim a portion of said surface, and defendant made answer that the surface mentioned in said notice was almost entirely covered by culm owned by defendant, which it intended to screen, that such reclaiming would interfere with the business of defendant, and that defendant declined to accede to the request.

The bill prayed.

1. That a decree be entered declaring title to the said culm to be in the plaintiff.

2. That the defendant be required to release to the plaintiff the land described in the reclaiming notice.

3. That defendant be restrained from using, leasing, screening, selling or interfering with the rights of the plaintiff in the Diamond bank.

The material portions of the lease are quoted in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*Thomas Darling,* of *Woodward, Darling & Morris,* for appellant, cited: Gallagher v. Hicks, 216 Pa. 243; Denniston

v. Haddock, 200 Pa. 426 ; Lehigh Coal & Nav. Co. v. Harlan, 27 Pa. 429 ; Berridge v. Glassey, 112 Pa. 442; Genet v. Del. & Hudson Canal Co., 163 N. Y. 173 (57 N. E. Repr. 297).

*George R. Bedford*, with him *Paul Bedford*, for appellee, cited: Hoyt v. Coal Company, 12 Luzerne Legal Register Rep. 1 ; Dunham v. Haggerty, 110 Pa. 560 ; Lance v. Coal Co., 163 Pa. 84.

OPINION BY MR. JUSTICE BROWN, October 21, 1907:

In Denniston v. Haddock, 200 Pa. 426, we said, through the present Chief Justice : " the expression that a conveyance of coal in place, even by a lease for a limited term is a sale, is inaccurate as a general proposition of law, and unfortunate from its tendency to mislead. . . . Whether it would be better to call such an instrument accurately what it certainly was at common law, a lease without impeachment of waste, or to endeavor to reconcile all the decisions by calling it a conditional sale, is not necessary at present to discuss. The point to be noted is that the rules applicable to sales are not to be applied indiscriminately to such instruments but each is to be construed like any other contract by its own terms ; " and again, in the very late case of Gallagher v. Hicks, 216 Pa. 243 : " Nor is it disputed that a contract regarding coal in place may be a sale absolute, a conditional sale or a lease. There is nothing revolutionary in the cases referred to. In Denniston v. Haddock it was pointed out that in Hope's Appeal, 29 W. N. C. 365, there was in fact a sale of the coal in place and the case was correctly decided on that basis. But an unfortunate expression in the opinion had been the starting point of a tendency to class together all contracts about coal in place as absolute sales without due regard to each particular contract and the obligation to interpret it by its own terms and intent. What Denniston v. Haddock and the cases which have followed it did was to check the tendency to indiscriminate lumping of all such contracts together and to recall in regard to them the true principles of construction applicable alike to all contracts."

In the present case the determination of the controlling question raised—the ownership of coal which passed through the

five-eighths inch meshes in the screens—must depend upon the terms of the agreement between the appellant and the Wilkes-Barre Coal & Iron Company, executed December 30, 1869, no matter by what name it may be called. Under it the appellee, as the successor of the original lessee, claims ownership of this coal, while the appellant insists that by it such ownership did not pass. At the time the agreement was executed this small coal had no marketable value; now it has, but this is not material, if the intention of the parties clearly appears on the face of their agreement as to what should pass to and become the property of the lessee. If their intention was there expressed as to what, and what alone, could be mined and removed from the premises, the expression of that intention is now the law between them as to the coal which neither, on December 30, 1869, may have regarded as having any value.

The lessor demised, leased and to mine let unto the Wilkes-Barre Coal & Iron Company "All that vein or seam of coal known as the Baltimore vein, and the veins or seams of coal underlying" it. This, without more, gave the lessee the right to mine all the coal from the veins named; but that a sale of all the coal in place was not contemplated, that the veins were not to be exhausted, clearly appears from a subsequent clause, in which it was agreed "that at the end of said term the said party of the second part shall leave the mines worked under this lease in such good condition and so far prepared for future workings as that at least one hundred thousand tons of coal can be mined the next succeeding year from the then existing coal workings without injury to, or robbing of the mines." We have then instead of an actual sale of the coal in place, a mere license to work the veins upon the express condition that all the coal should not be taken from them.

Did all the coal that the lessee had the right to take from the veins become its property as soon as mined? If the terms of the lease were simply that, in consideration of the payment of stipulated sums, the veins could be mined and the coal taken away from them upon any basis for royalties agreed upon by the parties, the lessee would have the right to remove from the premises all the coal mined, without regard to the sizes into which it might be broken. Such, however, is not the agreement. In a clause not inconsistent with nor repugnant to any

other in the lease the lessee is permitted, in consideration of certain annual rentals—$30,000 for a period of four years, $35,000 for a period of five years, $40,000 for a second period of five years, and $45,000 for a third period of five years—to "mine and remove from said premises of the veins hereby leased, 100,000 tons of coal of 2,240 pounds each, of a size which will pass over a screen of five-eighths inch mesh in each and every year of said term." In express terms it was thus stated what the lessee might remove after mining, and this was the broken coal that would pass over the five-eighths inch meshes. Expressio unius est exclusio alterius. In the face of what is expressly given to the lessee in return for the rentals or royalties to be paid by it, it cannot ask that the law give it more. The parties agreed what the one should pay and just what the other should get for its money, and the appellee, having got all that the lease gave it, cannot get more.

The learned judge below was of opinion that the clause upon which the appellant relies, if standing alone, "might fairly lead to the conclusion that the intention of the parties was that the lessee should have the right only to mine and remove from the premises demised such coal as would pass over a screen of five-eighths of an inch mesh;" but he held that the case was controlled by Dunham v. Haggerty, 110 Pa. 560, and Lance, to use, v. Lehigh & Wilkes-Barre Coal Company, 163 Pa. 84, though recognizing the dissimilarity of the language of the leases in those cases and the present. The clause is to be construed as if it did stand alone, for, as stated, there is nothing in any other part of the lease inconsistent with the meaning of its plain words, and there is nothing in the two cases cited that would justify a disregard of them. In Dunham v. Haggerty the conveyance was of "all the coal and other minerals," under the described lands, "with the right to construct railroads, underground entries, and all necessary buildings and fixtures to facilitate the mining and removing said coal and other minerals, and to occupy such land as may be necessary for the same, by paying a reasonable rent therefor, as well as for the refuse of said mines." All the coal could be mined, and "said coal," "all the coal," could be removed. In Lance, to use of Gummey et al. v. Coal Company, the lease included all the coal on the land, with a reservation

to the lessor of all the culm or refuse coal from the mines.   As this was all that was reserved by the lessor, he was not allowed to claim more.

We have construed this lease just as it is written.   The decree is reversed and the record remitted, with direction that the bill be reinstated and an injunction awarded in accordance with the view expressed in this opinion, the costs below and on this appeal to be paid by the appellee.

MITCHELL, C. J., dissents.