# CHARLESTON.

ROBERT R. VAUGHAN *et al.* v. J. M. NAPIER *et al.*

Submitted October 24, 1922.   Decided October 31, 1922.

1.  MINES AND MINING—*Coal Lease Without Forfeiture or De-feasance Conditions Will Not be Canceled as Cloud on Les-sor's Title When Lessee Affirms Intent to Operate it.*

    A lease of land for twenty years to operate it for coal, containing no conditions of forfeiture or defeasance and upon consideration of the royalties to be paid the lessor, will not be canceled in equity and removed as a cloud on the lessor's title, when the lessee has the possession and has produced some coal and denies abandonment and affirms his intention to equip the mine and operate the property in compliance with the terms and provisions of the lease.   (p. 221).

2.  SAME—*Remedy of Lessor of Coal Lease Without Forfeiture or Defeasance, Condition Held to be Action at Law for Breach of Covenants, and Not in Equity to Cancel and Remove Cloud.*

    In such case and until actual abandonment, the remedy of the lessor against the lessee is not in equity to cancel the lease and remove the same as a cloud upon his title, but by action at law for the breaches of the covenants and conditions of the lease on the part of the lessee, or by some other appropriate proceeding.   (p. 221).

Appeal from Circuit Court, Lincoln County.

Suit by Robert R. Vaughan and others against J. M. Napier and others.  Decree for defendants, and plaintiffs appeal.

*Affirmed.*

*L lly & Shrewsbury,* for appellants.

*A. F. Morris,* and *Marcum & Shepherd,* for appellees.

MILLER, JUDGE:

The object of plaintiffs' bill is to have canceled and removed as a cloud upon their title to a tract of one hundred and ninety acres of land in Lincoln County a certain coal lease executed to defendants, the Ferrellsburg Coal Company, a copartnership, by plaintiffs' predecessors in title, Ira J. Adkins, and Teka, his wife, and General Adkins and Lula, his wife, dated August 1, 1918.

The bill alleges that said lessors acquired title to said land by deed of August 4, 1913, which reserved all the minerals, oil, gas, etc., with mining rights therein provided, "except all the coal therefrom goes with the land to the party of the second part," the grantees; that by deed of August 24. 1920, the said lessors had thereby granted and conveyed said land to plaintiffs, and that then being in possession, they shortly afterwards turned over and surrendered possession thereof to plaintiffs, who by themselves or by tenants have ever since remained in possession and occupancy thereof, together with the dwelling house, barn, and other improvements placed thereon.

The grounds of relief sought are that the lessees have not complied with the covenants contained in said lease on their part.  The lease by its terms was to run for twenty years with right of renewal upon the same terms and conditions for another period of twenty years, and the option was also given the lessees to purchase the land and the stock of goods and merchandise owned and conducted by the lessors within six months from the date thereof for the sum of $10,000.00, and if such purchase should be made, no rents or royalties should be paid by the lessees, but all such rents and royalties thereafter accruing should cease and terminate.

The covenants and agreements contained in the lease alleged to have been broken were as follows :.

"In consideration whereof, the party of the second part shall commence within thirty days from the date thereof to prospect and explore for coal, and as soon as reasonably possible thereafter shall open up and commence to operate the coal upon, in and under said land, and shall pay the parties of the first part, their heirs and assigns for each ton of Two Thousand pounds of coal mined and marketed from said land the sum of ten (10) cents royalty, said weights to be determined by railroad weights and measurements, and payment to be made on the first day of each month for all coal previously mined and weights whereof have been received by the parties of the second part. The party of the second part shall open, use and work the mines in such manner only as is usual and customary in skillful and proper mining operations of similar character in the same community, and so as not to do, cause or permit any unnecessary or unusual permanent injury to the same, and in the working of the said mines the party of the second part shall comply with the laws of this State and the United States now in force or that may be hereafter enacted regulating the conduct of said mines, and at the termination of this lease the party of the second part shall have the right to renew the same upon the same terms and conditions for another period of 20 years."

With respect to these covenants and those implied, the bill further alleges in substance that the lease contemplated the opening up and operation of the coal upon, and under the land speedily, and that buildings, tipples and miners' houses necessary and convenient to successfully operate the mine should be erected, and that there should also be constructed a side track, with steel rails thereon, connecting the railroad with said tipple or tipples, and that the tipple or tipples should also be connected with the working places in the mine by a tram or incline with steel rails thereon, and that the mine should be equipped with the necessary mining machinery, with all which covenants and implied covenants defendants have wholly failed to comply; that nothing has been done by defendants except to make an excavation on the outcrop of said seam of coal in a crude, unskillful and unsuc-

cessful manner and by occasionally mining in like manner a few wagon loads of coal from said land.

The answer of defendants to the original and amended bills admits the making and execution of the deeds and lease as alleged; but denies non-compliance by them with the covenants, agreements and stipulations in said lease; but on the contrary they allege that they have completely complied therewith and are continuing to do so, and say it is not true that for any of the alleged breaches of the covenants and agreements. expressed or implied, said lease has been forfeited and is now null and void. These denials are all general in terms and do not specifically deny the particular breaches alleged in the bill.

The lease contains no stipulation for a minimum royalty, nor any conditions of forfeiture for breaches of the covenant to operate the lease.

The proof shows, that prior to November or December, 1920, very little had been done by the lessees in the way of equipping the property for mining under the lease, that prior to August, 1920, when plaintiffs purchased the property, only about thirteen cars of coal had been mined, of from thirty-five to forty-two tons capacity; that after plaintiffs acquired the property the coal mined did not exceed about seven cars, the royalty on which at ten cents per ton would not amount to more than $32.00.

The evidence further is that in October, 1920, the lessees sold seventy acres of the leasehold to one W. M. Napier, a salesman residing in Huntington, West Virginia, who organized a small coal company to operate the mine, with an authorized capital of $10,000.00, and actually sold to and paid in by subscribers about $4,250; that in acquiring and operating the seventy acres Napier or his company expended in all about $5,792.00, of which sum $3,000.00 was paid for the lease, about $500.00 in the purchase of a team of horses, and the remainder in the construction of a tipple, a small affair, a chute, some for steel rails, some for mine cars, and a part for operating the mine. Of the rails purchased a part had been used inside the mine; the rest had remained on the ground outside to be used on the side tram when built, where

they were when suit was brought. The coal mined and shipped after the organization of the coal company amounted to about four cars in all, for which the company received about $550.00.

The equipment on the property prior to October 1920, when the sub-lessee, Napier or the coal company, took charge all told, consisted of one mine car, about two tons of steel rails on the inside of the mine; there were no tipples, store- houses, miner's houses, power house, or any other buildings or structures on the lease; but Napier says that he and his coal company had prior to this suit secured the promise of the Chesapeake and Ohio Railroad Company to put in a sidetrack to accommodate the coal company in operating the mine more economically that they otherwise could by wagons; but that when this suit was brought they suspended the work to await the result thereof. The evidence shows that in the meantime they had sold the team of horses and the harness and realized therefrom the sum of $500.00, the price paid for them. And it was proven that neither the plain- tiffs nor their predecessors in title had ever prior to the date of the suit made any objection or complaint about the man- ner of operating the mine, or given them any notice of their intention to seek the cancellation of the lease of August 1, 1918.

Do these pleadings and proofs make out a case for relief in equity by cancellation of the lease? We think it quite out of reason to conclude that the defendants have abandoned or intended any abandonment of the lease and of their rights under it. At the time of the suit Napier and his coal com- pany were still in possession of the property, and were making some pretense at least to operate it and to obtain better facilities for loading and shipping the coal. It is not alleged or proven that plaintiffs or their predecessors ever gave notice to defendants or any of them requiring strict or substantial compliance with the covenants relating to op- erating the property. Of course if, as the bill alleges, there had been nothing done under the lease, abandonment thereof would necessarily be implied, for the lease calls for speedy

and efficient operation in order that the lessors may receive the substantial consideration called for in the lease. But where the instrument contains no conditions for forfeiture, mere failure to comply with some of the covenants, or partial performance only, will not give courts of equity jurisdiction to set aside and vacate the contract between the parties. The cases cited and relied on by counsel for plaintiff were cases of actual abandonment, where nothing had been done under the contracts. Such are the cases of *Bluestone Coal Company* v. *Bell*, 38 W. Va. 297; *Starn* v. *Huffman*, 62 W. Va. 422; *Smith* v. *Root*, 66 W. Va. 633; and *Chandler* v. *French*, 73 W. Va. 658.    It is unnecessary to review these cases to show their inapplicability to the case presented here. What may have been said in the course of the opinions in those cases, or either of them, must be considered with reference to the facts involved therein and the issues presented thereby.

As the proof in this case fails to show any abandonment or intention to abandon the leasehold, and the contract contains no terms of defeasance, the plaintiffs must be left to their remedy or remedies at law. Intention to abandon can not be implied from partial failure of the consideration of the lease. *Hall* v. *South Penn Oil Company*, 71 W. Va. 82.

We are of opinion therefore that the decree below should be affirmed.

*Affirmed.*