# CHARLESTON.

## P. A. HAMRICK v. T. D. NUTTER.

Submitted January 16, 1923.   Decided February 13, 1923.

1. MINES AND MINERALS—*Lessor May Maintain Assumpsit for Lessee's Breach to Diligently Develop Property.* .

   Under section 16a, chapter 99, Code, the lessor in a coal mining lease may maintain an action of assumpsit for breach of lessee's covenant to properly and diligently develop the mine property.   (p. 118).

2. PLEADING—*Declaration for Breach of Lessee's Covenant to Diligently Develop Mine Property Held Not Demurrable for Indefiniteness.*

   A declaration in such an action which sets forth the lessee's covenants to pay the specified royalties, to mine the coal in an effective, workman-like and proper manner, to develop the coal diligently and properly, and to produce said coal so the plaintiff might receive an income and royalties therefrom and alleges that defendant has failed and refused to keep any and all of said covenants, is not subject to demurrer for lack of definiteness in the breaches assigned.   (p. 120).

3. MINES AND MINERALS—*Forfeiture Clause for Benefit of Lessor so that Lessee Cannot Avoid Lease by Mere Failure to Pay.*

   A forfeiture clause in a coal mining lease providing:

   "It is further agreed and understood that in event the lessee shall remain in default for three months in the payment of any installment for rent or royalty, or any part thereof, or shall abandon the demised premises or shall fail and cease, except when prevented by strikes or any other causes beyond his control, to prosecute a mining operation upon said premises for a period of six months consecutively, or shall fail for a period of three months to repay any sums paid by the Lessors as taxes on said improvements or shall violate any of the provisions of the lease by him to be kept and performed, then this lease shall cease and terminate, be fully and entirely without binding effect; and each Lessor or its, his, or their assigns be entitled hereby to re-enter and re-take possession of the premises respectively leased hereunder and all further rights and obligations on the part of the lessee shall be terminated"

   is for the benefit of the lessor.   He may, or may not, as he chooses, declare a forfeiture, for failure to pay the rentals or royalties as required therein; if he does not, he may recover

the accrued rentals or royalties. The lessee can not avoid the lease by mere failure to pay. (p. 121).

4.  FRAUDS—STATUTE OF—*Statute as to Contracts for Sale or Lease or Agreements Not to be Performed Within a Year · Satisfied if Signed Only by the Party to be Charged.*

Our statute of frauds providing that no action shall be brought upon any contract for the sale or lease of real estate or upon any agreement that is not to be ·performed within a year, unless such contract, or memorandum thereof, be in writing and signed by the party to be charged thereby, or his agent, is satisfied by the signature to the contract of the party to be charged thereby only, whether the suit to enforce it be at law or in equity. (p. 122).

5.  SAME—*Coal Mining Lease Signed by Lessee, But Not by Lessor, But Accepted, May be Enforced.*

Consequently, if a coal mining lease be signed by the lessee, but not by the lessor, and the lessor has accepted it, the lessor may enforce its provisions in an action against the lessee. (p. 123).

Certified question from Circuit Court, Clay County.

Action by P. A. Hamrick against T. D. Nutter. A demurrer to the declaration was overruled, and the question certified.

*Affirmed.*

*J. E. Springston,* for plaintiff.

*E. G. Pierson* and *E. P. Alderson,* for defendant.

MEREDITH, JUDGE:

This is an action of assumpsit brought to recover rentals accruing under the minimum royalty provision of a coal mining lease, and also for damages for failure to develop the mine as provided therein. Defendant craved oyer of the "writing obligatory" sued on, which being produced, defendand demurred to the declaration. The demurrer was overruled and the questions arising thereon were certified here.

The declaration avers that on June 20, 1917, plaintiff being the owner in fee of the undivided 5/6 interest of a certain tract of land containing 137 acres, by a certain indenture then and there made between the plaintiff and defendant and sealed with their respective seals, the plaintiff, for certain considerations therein mentioned and especially of the covenants

and agreements on the part of the defendant, his heirs, and assigns to be kept, paid and performed, did lease the said 137 acres to the defendant, his heirs and assigns, for the sole and only purpose of mining and operating the coal and the manufacturing of coke and for building switches, sidetracks, tipples, coke ovens, and other buildings and structures necessary for the mining and shipping of coke, the land being described by metes and bounds, and that the said lease was to remain in force for the term of 40 years unless sooner terminated as provided therein; that the defendant for himself, his heirs and assigns, in consideration of the premises, covenanted, promised and agreed: (1) to pay plaintiff a royalty of 10 cents per ton of 2240 pounds each for every such ton of coal mined from or used or sold on the premises for any other purpose than the manufacture of coke for shipment, (2) to pay plaintiff 15 cents per ton of 2240 pounds each for every such ton of coke manufactured upon the premises, (3) to pay plaintiff 15 cents per long ton run of mine for every such ton of cannel coal mined in a seam distinct and separate from the seams containing other coals and shipped from or used on the premises, (4) to pay the plaintiff a minimum royalty for the use of said premises of $5.00 per acre per year whether the quantity of coal mined and coke manufactured should produce that amount of royalty or not, provided, however, that during the first year of the term royalties were to be paid only on the amount of coal mined and during the second year the minimum royalty was to be not less than $2.50 per acre per year, and for the third and each succeeding year thereafter during the life of the lease the minimum royalty was to be $5.00 per acre per year, all of which royalties and rentals became due and payable on the 20th day of January, April, July and October of each year, after the 20th day of June, 1917.

Among other averments, plaintiff further says that defendant covenanted, promised and agreed to mine said coal in the most effective, workmanlike and proper manner with due regard for future mining and according to the most approved and suitable methods of mining, complying with the laws of

the state regulating the mining of coal, and to keep the mine in good condition as a going property with all the entries and air courses requisite and proper for the future working of the mine protected by proper pillars of coal and well timbered; that he also covenanted, promised and agreed reasonably and diligently to develop the said coal, and in like manner to produce the said coal so that plaintiff might receive and have the income and royalties therefrom which the defendant covenanted, promised and agreed to pay for the privileges so granted to him; that although each and every acre of the said 137 acres covered by said lease is underlaid with valuable seams of coal and although the plaintiff has always from the time of the making of said lease hitherto well and truly performed, fulfilled and kept all things in said lease contained on his part to be performed and fulfilled and kept according to the tenor and effect, true intent and meaning thereof, yet said defendant has not performed, fulfilled or kept any thing in the said lease contained or implied therefrom on the part of the said defendant to be performed, fulfilled and kept, according to the tenor and effect and true intent and meaning thereof, nor has he properly and diligently developed the said seams of coal or either of them for coal mining purposes although often requested so to do, nor has he made reasonable efforts to do so, and has not paid to the plaintiff the minimum royalties as provided in said lease, and that by reason of the defendant's failure to comply with said promises and undertakings and to perform said express and implied covenants, conditions, agreements and undertakings of said lease plaintiff has been damaged $3500.

From the questions certified and from brief of counsel for defendant, it appears that four grounds for demurrer to the declaration are urged:

First, that assumpsit will not lie for breach of a covenant to develop coal lands, notwithstanding sections 10 and 16a, chapter 99, Code. It is clear that section 10 applies only to a promise, undertaking or obligation to pay money, and where it is signed by the party who is to be charged thereby or his agent. In that case debt or assumpsit lies whether the prom-

ise, undertaking or obligation is sealed or not. Under that section, royalties to be paid in money, stipulated in the lease as rents may be recovered; but this action is not only to recover the royalties, or rents, but damages for defendant's breach of the covenant to develop the mining property; it is to this last mentioned claim that objection is made, and we are cited to *Slaughter* v. *Thacker Coal Co.*, 55 W. Va. 642, 47 S. E. 248, for defendant's proposition. That case, however, is against defendant's theory. That was an action in assumpsit by plaintiff for damages for breach of a contract to deliver coal for resale. Judge Poffenbarger, who wrote the opinion in that case, took the view that the action did not lie, under section 10, chapter 99, Code, inasmuch as the breach was a failure to deliver coal; the majority of the court, however, were of opinion that even under section 10, assumpsit would lie, because of a provision in the contract wherein the defendant agreed to pay 10 cents per ton as liquidated damages upon failure to deliver. That case, however, did not turn upon that question. It was brought July 31, 1897, though not decided by this court until 1904. In the meantime, in 1901, section 16a, chapter 99, Code, was enacted, which reads: "That an action of trespass on the case in assumpsit may be brought in all cases to recover damages for the breach of any contract sealed or unsealed, express or implied."

We are also cited to *Parkersburg & Marietta Sand Co.* v. *Smith*, 76 W. Va. 246, 85 S. E. 516, for the proposition that assumpsit can not be maintained where a covenant affecting real estate is the basis of the action, as for instance in the present case, the mining and development of coal. A careful examination of that case, however, does not support that proposition in any sense. In that case items in contract and an item in tort were combined in the same declaration, the item in tort being for certain damage done to some of plaintiff's property; it was there said that there can be no recovery in an action of assumpsit for damages for a mere wrong, and Judge MILLER, in his opinion, says: "The rule which has the support of our decisions, as well as the de-

cisions of most of the states, is that tort may not be waived, and an action maintained as upon an implied contract to pay the damage sustained, unless the defendant's estate has been benefited thereby, as by the appropriation of plaintiff's property, or the proceeds of the sale thereof, and that for mere damages sustained for wrong and injuries done to the person or property resulting in no pecuniary benefit to the estate of the defendant, assumpsit will not lie.'' In the present case plaintiff's action is not based in any sense upon a tort, but wholly upon breach of contract; hence the above case has no application.

That under section 16a, above quoted, the action of assumpsit will lie for breach of a covenant to mine or develop coal lands we think there can be no doubt.

Second. It is contended by defendant that there is no specific breach of any covenant averred in plaintiff's declaration. On the contrary, the declaration avers that the defendant breached all of his covenants and particularly breached his covenants to pay the royalties as they accrued and properly and diligently to develop the seams of coal or either of them for coal mining purposes as required by the lease. It is true that this court held in *Kern* v. *Zeigler*, 13 W. Va. 707, that in an action in assumpsit on a writing under seal containing dependent covenants when the covenant sued on contains a promise, undertaking or obligation to pay money, the same particularity in pleading is required as if the declaration was in covenant on the instrument. We think the declaration in this respect is sufficient.

Third. That the following clause in the lease, which became a part of the declaration upon craving of oyer and being produced to the court shows that plaintiff has no right of action; in other words, that the lease has become forfeited by its terms. It reads: ''It is further agreed and understood that in event the lessee shall remain in default for three months in the payment of any installment for rent or royalties, or any part thereof, shall abandon the demised premises or shall fail and cease, except when prevented by strikes or any other causes beyond his control, to prosecute a mining

operation upon said premises for a period of six months con-
secutively, or shall fail for a period of three months to repay
any sums paid by the Lessors as taxes on said improvements
or shall violate any of the provisions of the lease by him to
be kept and performed, then this lease shall cease and termin-
ate, be fully and entirely without binding effect; and each
Lessor or its, his, or their assigns be entitled hereby to re-
enter and re-take possession of the premises respectively
leased hereunder and all further rights and obligations on the
part of the lessee shall be terminated.''

The forfeiture provision quoted was inserted therein for
the benefit of the lessor, and he may insist upon the forfeiture
or waive it. It has been so held in numerous instances by
this court in relation to such forfeiture provisions, as for
instance, in *Roberts* v. *Bettman,* 45 W. Va. 143, 30 S. E.
95, a case involving the construction of an oil lease; in *Lawson*
v. *Williamson Coal & Coke Co.,* 61 W. Va. 669, 57 S. E. 258,
involving a coal mining lease; and in *Union Central Life Ins.*
*Co.* v. *Zihlman,* 68 W. Va. 272, 69 S. E. 855, involving a
forfeiture provision in a policy of insurance. This is so well
established that further citation of authority is unnecessary.

Fourth. The copy of the lease exhibited to the court by
plaintiff purports to be signed and sealed by defendant but
not signed by plaintiff. Counsel for defendant contends that
it is not binding upon him for lack of mutuality. Plaintiff's
counsel contends that the lease can not be considered upon
a demurrer to the declaration and cite us to the case of *State*
v. *Pingley,* 84 W. Va. 433, 100 S. E. 216, wherein it was held
that papers annexed or attached to a declaration as for ex-
hibits or parts thereof, are not parts of it, and cannot be con-
sidered upon a demurrer thereto. That statement, however,
refers to the bill and final decree, which were filed with
plaintiff's declaration in that case in an action on an injunc-
tion bond. It has no reference to the bond itself; it was pro-
duced and read on oyer thereof before the demurrer to plain-
tiff's declaration was disposed of. As a general rule, the
right to crave oyer of papers mentioned in a pleading at law
applies only to deeds and letters of probate and administra-

tion, not to other writings, and only applies to a deed when the party pleading relies on the direct and intrinsic operation of the deed, 4 Minor, Inst. 1280; 5 Robinson's Prac. (2d. ed.) 132, but when oyer is craved and the instrument is produced, it becomes a part of the pleading. *Wood* v. *Com.,* 4 Rand. (Va.) 330; *Jarrett* v. *Jarrett,* 7 Leigh (Va.) 93; *Thompson* v. *Boggs,* 8 W. Va. 63; *Chesapeake & Ohio R. Co.* v. *Chapman,* 115 Va. 32, 78 S. E. 631; *State* v. *Jarrell,* 76 W. Va. 263, 85 S. E. 525.

The defendant claims that the lease is a "nudum pactum"; that the plaintiff is not bound, therefore the defendant is not bound. Defendant contends that our Statute of Frauds (Code, Ch. 98) which provides that no action shall be brought to charge any person upon any contract for the sale of real estate or the lease thereof for more than one year, or upon any agreement that is not to be performed within a year, unless the contract be in writing and signed by the party to be charged thereby or his agent, is a bar to plaintiff's right of action, because the copy of the lease is not signed by plaintiff. But this makes no difference. He has brought an action upon it, says that he has performed all the conditions therein required of him. "The statute of frauds does not require that both parties sign the agreement, but only that it shall be signed by the party to be charged thereby; therefore, an agreement by the defendant to purchase land at a certain price may be specifically enforced though the plaintiff is not bound to convey, where, by his bill, he offers to perform his part." *Mountain Park Land Co.* v. *Snidow,* 77 W. Va. 54, 86 S. E. 915.

The question of lack of mutuality was raised in *Monongah Coal & Coke Co.* v. *Fleming,* 42 W. Va. 538, 26 S. E. 201, where the purchaser of certain coal had not signed the sale contract, but sought specific performance. Upon that question the court there said:

> "Upon principle, such a contract for the sale of real estate, in order to be binding, is not required to be signed by both parties, for it is signed by the owner and seller of the land, the party sought to be charged
> 93 W. Va.

and compelled to convey. And the contract does not lack mutuality, for, the payment of the consideration being in money, no writing is required, either to prove the agreement of the buyer to pay, or to make such agreement binding on him; and it has long been the practice in this state to enforce against the vendor, who alone has signed, a title bond for the sale and conveyance of real estate in favor of the vendee and his assignee, for if the vendee has performed his part of the agreement, is ready and willing to perform it, or has been prevented from performing it by the wrongful act of the vendor, the vendee will not be confined to his action at law for the amount of the penalty, but may choose his remedy in equity for specific performance.''

In *Land Co.* v. *Snidow, supra,* the principle was applied to a contract of purchase signed by the vendee but not signed by the vendor. It was held that the owner might enforce payment by bill in equity. If a contract for the purchase of real estate signed only by the vendee is binding on him, we see no reason why a lease executed by the lessee but not executed by the lessor should not be enforced at the suit of the lessor. The lessee is the party to be charged thereby. If the lease is executed by the lessee and delivered to and accepted by the lessor it binds the lessee. *Lagerfelt* v. *McKee,* 100 Ala. 430, 14 So. 281; *Singer Mfg. Co.* v. *Converse,* 23 Colo. 247, 47 Pac. 264; Page, Contracts, § 1325, and authorities there cited.

The great weight of authority in this country and England is that the statute of frauds is satisfied by the signature to the contract of the party to be charged thereby only, whether the suit to enforce it be at law or in equity, and whether it relates to the sale or lease of real estate or personalty. *Hodges* v. *Kowing,* 58 Conn. 12, 18 Atl. 979, 7 L. R. A. 87; *Kilday* v. *Schancupp,* 91 Conn. 29, 98 Atl. 335, L. R. A. 1917A 151. Of course, there must be acceptance by the party who does not sign, but suit upon the contract by the party who does not sign is evidence of acceptance.

One other question not raised by the parties or the trial court, but which has occurred to us in our discussion, grows

out of the fact that the declaration shows that plaintiff owns but 5/6ths of the land in fee, yet he leased all the coal therein to defendant. We are of opinion that whatever objection defendant may have on that score is matter of defense; we therefore hold that the declaration is sufficient, and the ruling of the circuit court is affirmed.

*Affirmed.*