BANKERS POCAHONTAS COAL COMPANY *v.* CENTRAL POCAHON-
TAS COAL COMPANY, *et al.*

(No. 7297)

Submitted September 27, 1932.   Decided October 4, 1932.

*Strother, Sale, Curd & St. Clair,* for appellant.

*Harman & Howard,* for appellee Central Pocahontas Coal Co.

*Wehrle & Murphy,* for appellee Berwind Land Co.

HATCHER, JUDGE:

This appeal involves the sufficiency of the bill, a demurrer thereto having been sustained by the circuit court.

The bill was filed at July Rules, 1931. It appears therefrom that in 1901 Pocahontas Thin Vein Coal Land Company leased to Slick Rock Coal Company the coal on a tract of 306 acres in McDowell County for a period of thirty years from January 1, 1902. The lease provided a royalty of eight cents a ton for the coal actually mined and a minimum annual royalty of $3,000.00. By a supplementary contract between lessor and lessee, made in December, 1902, the actual royalty was reduced to five cents a ton, the minimum annual royalty was renounced, and the right to mine was limited to one seam of coal. In 1908, the plaintiff, Bankers Pocahontas Coal Company, became entitled to receive and enforce payment of the royalty. The defendant, Central Pocahontas Coal Company, became the owner of the tract in 1919, through mesne conveyances, and became the assignee of the lease in 1920, through mesne assignments. The Central Company conveyed that tract and assigned the lease to its co-defendant, Berwind Land Company, in 1930. The coal was mined and all royalty paid until July 1, 1922, when the Central Company ceased mining, and no coal has been mined since by either of the defendants. The bill alleges that there is approximately 692,000 tons of coal remaining on the lease, which "could have and should have long since been mined out by the defendants had they continued to mine the coal from said seam with reasonable diligence." The bill prayed for an accounting and that defendants be required to pay for such coal "as should have been mined."

The original instrument between the Thin Vein Company and the Slick Rock Company (filed with the bill) termed itself a "contract of lease", and named the parties *"lessor"* and *"lessee"*. The words in the granting clause are "demise, let

and lease for coal mining and coke purposes only, * * * a certain tract of land", etc. The royalties were to be considered and treated as "rents reserved upon the contract by the lessor," with the rights to enforce payment given by law "to landlords against delinquent tenants." The actual royalty was payable on every ton of coal mined, and royalty was also to be paid "on the available coal" left by the lessee "upon abandoning any room, working or other opening * * * not necessary to be left for the proper securing of the works." This question was to be submitted to arbitration.

There is no explanation in the bill of plaintiff's delay in making its demand. It is not apparent why the accounting sought could not have been had in a court of law as well as in a court of equity. But appellant's brief would brush aside these considerations and have us consider only three propositions, two of which may be conceded, to-wit, (1) when the minimum royalty was renounced the law implied an undertaking by the lessee to operate the coal with reasonable diligence (if the operation was mutually profitable), and (2) the provision for arbitration, not being made a condition precedent to the right to sue, does not preclude this suit. 40 C. J., 1020; *Flavelle v. C. & C. Co.*, 82 W. Va. 295, 96 S. E. 600. Appellant's third proposition is as follows:

"Plaintiff is entitled to recover as purchase money, royalty or damages 5c per ton for all the remaining coal. The Slick Rock Contract brought about a sale of coal in place rather than a lease of the coal or the land for coal mining purposes, thereby making Slick Rock and its assignees liable to the plaintiff and its assignors for the full purchase price for the coal at 5c per ton."

In support of this proposition the brief cites (1) *Wallace v. Coal Co.*, 58 W. Va. 449, 52 S. E. 485; (2) *Coal Co. v. Overholt*, 81 W. Va. 427, 94 S. E. 735; (3) *Feather v. Baird*, 85 W. Va. 267, 102 S. E. 294; (4) *Fairchild v. Fairchild*, 9 A. 255, 6 Sadler (Pa.) 231; (5) *Coal Co. v. Wright*, 177 Pa. 387, 35 A. 919; (6) *Canal Co. v. Hughes*, 183 Pa. 66, 38 A. 568; (7) *Hosack v. Crill*, 204 Pa. 97, 53 A. 640; and (8) *Denniston v. Haddock*, 200 Pa. 426, 50 A. 197. The first, third and seventh citations each involved the construction of a deed of

conveyance absolute on its face. The terms of the instrument do not appear in the fourth citation. The sixth citation deals solely with the severance of coal from surface and with adverse possession. The second and fifth citations do involve so-called leases but both of the instruments leased "all the coal", both provided a minimum annual rental and the lease in the *Overholt* case exacted payment of the lessee for "all the merchantable coal yet unmined" at the expiration of the term. It is apparent that none of the above seven citations are apposite, and the brief is particularly unhappy in its eighth citation as it opposes plaintiff's proposition, saying: "* * * the expression that a conveyance of coal in place, even by a lease for a limited term is a sale, is inaccurate as a general proposition of law, and unfortunate from its tendency to mislead, * * * the rules applicable to sales are not to be applied indiscriminately to such instruments but each is to be construed like any other contract by its own terms." *Denniston v. Haddock* was specifically approved in *Coolbaugh v. Coal Co.,* 213 Pa. 28, 62 A. 94, *Gallagher v. Hicks,* 216 Pa. 243, 65 A. 623, and *Coal Co. v. Coal Co.,* 219 Pa. 124, 67 A. 987, in each of which a mining contract was held to be a lease and not a sale of the coal in place.

The brief relies on a recital of the elements constituting a sale of coal in place, appearing in the *Overholt* case, page 434. One of those elements is the payment of a minimum royalty. Plaintiff's contract (as modified in 1902) calls for no such payment, so the *Overholt* case does not apply. The decision in that case is manifestly correct, but the recital upon page 434 is not a complete statement of the rule on this subject, in that it does not mention as elements of a sale the right and obligation to mine all the coal and/or pay therefor. A large number of coal mining contracts were in litigation in Pennsylvania in the early days of the coal industry, for which reason the Pennsylvania courts may be said to have taken the lead in the construction of such contracts. In 1885, Judge Hand of the common pleas court, reviewed the Pennsylvania decisions, and deduced three general principles as follows: "In order to create a conveyance absolute, (1) the right must be exclusive in the vendee, (2) of all the coal, and (3) he must be compelled to mine, or what is the same thing, pay for

the coal if not mined." *Rr. Co. v. Sanderson*, 109 Pa. 583, 585, 1 A. 394. In affirming the common pleas court in that case, the supreme court stated the rule more elaborately on page 589: "Where it is clear that the owner of a tract of land grants the right to take all the coal beneath the surface, and the grantee obligates himself to mine and remove all said coal, and to pay a certain price per ton each month for all coal mined, not less than a named quantity to be mined and paid for every year, the contract to be binding until all the coal under the tract is mined, and the rights, covenants and obligations are made binding on the parties, their heirs and assigns, and executors or administrators, there is an actual sale of the coal." We have examined numerous Pennsylvania decisions which construed demises of coal to be sales. In every instance the exclusive right to mine and the obligation to mine and/or pay for *all the coal* were given special if not controlling significance. See the later cases of *Robinson v. Pierce*, 278 Pa. 372, 375-6, 123 A. 324, and *Sturdevant v. Thompson*, 280 Pa. 233, 236, 124 A. 434, and their many citations. That holding is consistent with the established law of sales, is in harmony with our case of *Chandler v. French*, 73 W. Va. 658, 661, 81 S. E. 825, and we concur therein.

The original contract in this suit did not purport to lease *all the coal*, but merely leased *the tract* for mining and coking purposes. That contract did not obligate the lessee to mine or pay for *all the coal*. The contract as modified had no such obligation as to the one seam of coal, and no provision even for a minimum royalty. So we construe it to be a lease and not a sale of coal in place.

Counsel in oral argument said the plaintiff would rely on the contract as a lease, if it were held to be not a sale. The only unmined coal for which the lease promised payment was coal unnecessarily left in rooms, workings or other openings. The bill does not allege that the 692,000 tons of unmined coal comes under that description. The bill does allege that the coal remaining could have and should have been mined. But that allegation is the mere conclusion of the pleader and is supported by no allegation of fact. If available coal was left through improper mining operation, or if the lessee breached its implied promise to mine the coal (if mutually profitable)

with reasonable diligence, the plaintiff should have proceeded at law (provided its demands were not stale). *Vaughn v. Napier,* 92 W. Va. 217, 114 S. E. 526; *Hambrick v. Nutter,* 93 W. Va. 115, 116 S. E. 75; *Hays v. Bowser,* 110 W. Va. 323, 158 S. E. 169.

The bill presents no ground for equitable relief, and the ruling of the circuit court is affirmed.

*Affirmed.*