# CHARLESTON.

## P. A. HAMRICK v. T. D. NUTTER.

### (No. 5122.)

Submitted March 17, 1925.     Decided March 31, 1925.

TENANCY IN COMMON—*Coal-Mining Lease, Executed by One of Several Co-tenants, is Valid Between Parties Thereto; Lessee, Taking Lease Executed by One of Several Co-tenants, Knowing Facts, Liable to Lessor for Delay Rentals.*

A coal mining lease executed by one of several co-tenants, while not binding on the others, is valid between the parties thereto; and where, with knowledge of the outstanding in-terests, the lessee takes such lease, which limits the grant to "such rights and privileges as the lessor has, or may have the lawful right to grant," the fact of such outstanding in-terests alone will not constitute total failure of consideration barring the lessor from recovery of the minimum or delay rentals accruing to him under the contract, while the lease remains in force.

(Tenancy in Common, 38 Cyc. p. 125.)

(NOTE:—Parenthetical references by Editors.   C. J.—Cyc.   Not part of syllabi.)

98 W. Va.

Error to Circuit Court, Clay County.

Action by P. A. Hamrick against T. D. Nutter. Judgment for defendant entered on directed verdict, and plaintiff brings error.

*Reversed and remanded.*

*J. E. Springston* and *R. K. Morris*, for plaintiff in error.
*E. G. Pierson* and *E. P. Alderson*, for defendant in error.

MILLER, JUDGE:

By this action in assumpsit plaintiff seeks to recover minimum rentals alleged to have accrued to him in a coal mining lease, and damages for the failure of defendant, the lessee in said lease, to develop the property as provided therein. Defendant's demurrer to the declaration was overruled, and the questions then arising on the rulings of the trial court were certified to us for determination. This court sustained the holding of the lower court. See *Hamrick* v. *Nutter*, 93 W. Va. 115, where a full statement of the facts on which plaintiff's cause of action was based, will be found.

When the case was called for trial, defendant pleaded non assumpsit, and filed his two special pleas of total failure of consideration. The first of the pleas alleges that defendant was induced to enter into the contract of lease on the representation of plaintiff, that he was the owner in fee simple of the land containing the coal demised, and that the same contained 150 acres, but that the said tract contained but 75 acres, and that plaintiff owned but a six-seventh undivided interest therein. The second special plea alleges that the lease was executed upon the representation by plaintiff that the land described therein was underlaid with valuable seams of coal, in sufficient quantity to operate profitably, and was merchantable and marketable in quality, which was not the fact.

Upon the introduction of plaintiff's evidence, on motion of defendant, the court instructed the jury to find for defendant. From a judgment entered on a verdict for defendant as directed by the court, plaintiff obtained the present writ of error.

The lease in question was for a term of forty years from June 20, 1917, and describes the leased premises by monuments, metes and bounds, but does not state the acreage contained therein. Following the description of the land is the following clause: ''Should any dispute arise as to the number of acres included in this lease, in computing the minimum royalty, as hereinafter provided, either party may have said land surveyed and acreage correctly ascertained.'' Plaintiff testified that defendant paid the tonnage royalty for all coal mined during the first year of the lease, pursuant to the contract, and paid the first three quarterly installments of minimum royalty for the second year, but declined to pay the fourth quarterly installment for that year, saying he had ''had the land plotted and it was only 137 acres, and the last quarter of the $2.50 was taken up for overpayments on the other three.'' Previous to that time the quarterly installments had been paid on a basis of 147 acres, which it appears was the acreage the parties understood the lease to cover. Plaintiff says he did not represent to defendant that he owned 147 acres, but did tell him that the land had been leased for oil and gas as 147 acres. And it seems that the parties agreed that the lease covered 137 acres. Plaintiff testified that his deed for the property calls for ''seventy-five acres more or less.'' After the third installment for the second year, no further payments were made by defendant.

The granting clause in the lease, and the description of the property, purport to convey all interest in the coal; but it appears from the evidence that a one-seventh undivided interest in the land was owned by the minor heirs of E. G. Bucklin, plaintiff's aunt. J. I. Bucklin, the father of these minor heirs, testified that a few days after the execution of the Hamrick lease to defendant, defendant presented to him a lease for the one-seventh interest, which he signed. Bucklin says he had been duly qualified as guardian for the children, but that no legal proceedings were had to authorize him to execute the lease for their interest in the coal. From the testimony of plaintiff and Bucklin, it appears that defendant knew that plaintiff owned but a six-seventh interest in the coal, and that the other seventh was owned by the Bucklin heirs. Furthermore, the lease from plaintiff contains the

following provision: "It being understood and agreed, however, that the rights and privileges herein granted are and shall be construed and limited to such rights and privileges only as the lessor has, or may have the lawful right to grant." And it further appears from written correspondence between the parties to this suit, that defendant had expressed no intention to abandon the lease as late as April 22, 1921; but that he had in contemplation further development of the coal operation thereon; and there is no evidence that he ever complained of the fact that plaintiff owned but a six-seventh interest in the coal, or that the acreage was deficient.

From the briefs filed by counsel, it appears that the trial court directed a verdict for defendant on the theory that his pleas of total failure of consideration constitute a bar to plaintiff's recovery. Was there total failure of consideration? If plaintiff should have misrepresented the acreage, that fact would not amount to total failure of consideration. The land was described by metes and bounds only, and from a computation defendant ascertained that it contained 137 acres. The description in the lease is not challenged. Defendant had been in possession of the lease and the coal operation for more than four years when the suit was brought. There is no evidence that plaintiff did not own a six-seventh interest in the land described in the lease; and defendant's pleas do not deny the fact. Whatever the actual acreage may be, defendant is only obligated to pay the minimum royalty by the acre, for the lease specifically provides that in computing minimum royalty, either party may have the land surveyed and the acreage correctly ascertained. But there is no direct proof of a deficiency in acreage.

In *Philadelphia Company* v. *Shackleford,* 83 W. Va. 280, it was held that: "Where such lease for oil and gas calls for 288 acres, and the lessor has title only to a one-half undivided interest in the oil under 67 acres thereof, there has not been such total failure of consideration as to warrant recovery of delay rentals paid in an action by lessee against lessor as for money had and received. Such lease confers on the lessee all the rights of the lessor as a co-tenant to enter and operate for oil, and if such right be of any substantial value, there has not been such total failure of consideration as to warrant

recovery of the rentals paid for delay in drilling a well in an action against lessor for money had and received." See, also, *Gaffney* v. *Stowers,* 73 W. Va. 420.

Did the fact that plaintiff owned only a six-seventh interest in the leased premises defeat his right to delay or minimum rental. From the evidence introduced it clearly appears that defendant knew, before he began to operate for coal, that a one-seventh interest was owned by the Bucklin heirs. And while the granting clause in the lease purports to demise all the coal under the land described therein, it further contains the provision above quoted, limiting the grant to "such rights and privileges as the lessor has, or may have the lawful right to grant." This was notice to defendant that other rights might exist, and evidence that the parties recognized other rights. Then, defendant took the lease from Bucklin. How much coal was mined under the lease does not appear, nor does the evidence show when defendant ceased operations, if at all. His letters to plaintiff, written between July 22, 1919, and April 22, 1921, only explain delay in operation, and excuses for failure to pay the royalties. There is not a word signifying any intention on defendant's part to abandon the operation or to cancel or repudiate the contract of lease. He had for all that time the benefit of the lease. Whatever may be the rights or remedies of the owners of the one-seventh interest, no one has attempted to interfere with the development of the coal. The fact that defendant has not secured the interest of the other co-tenants can not be charged to plaintiff, nor defeat his rights. He was, by his lease, bound as to his interest. "An oil and gas lease executed by one or more of several co-tenants, while not binding on the others, is valid between the parties thereto, and binding on the interest of the lessor, even while the premises remain undivided." *Freeman* v. *Egnor,* 72 W. Va. 830. See, also, 1 Thornton on Oil & Gas, (4th ed.), 774-778.

Defendant's counsel say that the case of *Philadelphia Company* v. *Shackleford* is not applicable here, because this suit is for minimum royalty, and not delay rental, as in the former case; and that here plaintiff demands royalty on coal which it is impossible for the lessee to mine, due to the fact that the lessor failed to demise to the defendant the lawful right

to mine the same. Whether we call the consideration named in the contract rental or minimum royalty, it is simply rent to be paid the lessor for the lessee's right to withhold from the former the interest demised. And defendant has had possession of plaintiff's interest under the lease, since he began removing coal from the premises at least. At any time defendant might have secured a lease for the outstanding interest, plaintiff would have become bound for the full term of his lease. This same question was raised in *Philadelphia Company* v. *Shackleford,* and was there disposed of by reference to the holding in *Gaffney* v. *Stowers,* cited supra. But we have here a different state of facts. Plaintiff limited his grant to such rights and privileges as he had, or might have the lawful right to grant. The lease undoubtedly invested in defendant plaintiff's interest in the coal, for the purpose of mining the same during the term of years designated, and there could not have been a total failure of consideration. *Gaffney* v. *Stowers, supra; Philadelphia Company* v. *Shackleford, supra; Hale* v. *Grow,* 88 W. Va. 173.

We are of opinion that the trial court erred in directing a verdict for defendant. The judgment will therefore be reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed and remanded.*